**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C**.
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA JACOBS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>NIAGEN BIOSCIENCE, INC. and CHROMADEX, INC.,<br><br>    Defendants. | Case No.    8:26-cv-1365<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Melissa Jacobs ("Plaintiff") brings this action on behalf of Plaintiff, and all others similarly situated, against Niagen Bioscience, Inc. and ChromaDex, Inc. ("Defendants"). Plaintiff makes the following allegations pursuant to the investigation of Plaintiff's counsel and based upon information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This is an action arising from the false and misleading representations that Defendants made for years concerning their Tru Niagen nicotinamide riboside ("NR") dietary supplements (the "Products").

2.     Specifically, Defendants falsely represented that the Products were "clinically proven" to significantly increase NAD+ levels and provide meaningful anti-aging, vitality, cognitive, cardiovascular, immune, muscle recovery, cellular repair, and energy-related benefits. Defendants' advertising campaign falsely conveyed that the Products had been clinically demonstrated through rigorous human science to provide meaningful real-world health and anti-aging outcomes.

3.     In reality, Defendants' advertising materially overstated and misrepresented the underlying science concerning the Products and falsely translated biomarker and mechanistic findings into broad consumer-perceptible health and anti-aging claims.

4.     Defendants aggressively marketed the Products through Amazon.com, Defendants' own websites, social media, podcasts, influencers, testimonials, digital advertising, and subscription programs as scientifically validated "longevity" supplements backed by human clinical science.

5.     Independent review by the National Advertising Division ("NAD") and National Advertising Review Board ("NARB") determined that Defendants' challenged advertising claims conveyed misleading messages to consumers and

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    1

recommended that Defendants discontinue or modify numerous "clinically proven," anti-aging, vitality, and health-benefit claims.

6. Specifically, the NAD and the NARB concluded that Defendants improperly translated biomarker and mechanistic findings concerning NAD+ into broad consumer-perceptible health and anti-aging claims.

7. The NARB specifically concluded that many of Defendants' claims went beyond cell-level mechanistic effects and that Defendants promised perceptible or functional health benefits that were not supported by the science Defendants relied upon.

8. In simple terms, Defendants have taken the fact that its Product *may* increase NAD+ levels in the blood and used that to make sweeping, definite, promises about the down-stream health effects that consumption of the Products "will" have, with no concrete scientific foundation to back it up. Defendants have taken limited biomarker and mechanistic findings and translated them into broad pronouncements about its Products' supposed anti-aging and wellness capabilities to consumers. This was many steps too far, and the industry has put Defendants on notice through the NAD and NARB proceedings. Defendants have even conceded that their conduct crossed the line because they have agreed to remove the challenged claims from its Products' packaging.

9. Reasonable consumers are not in a position to independently evaluate whether complex scientific and clinical claims concerning NAD+, cellular repair, healthy aging, cognition, vitality, energy production, and anti-aging effects are actually supported by rigorous human clinical science.

10. Defendants have profited greatly from the explosion in the anti-aging, wellness, and NAD+ supplement markets. Consumers are increasingly concerned about aging, cognitive decline, fatigue, vitality loss, and long-term health deterioration.

11.     As a result, a substantial portion of Defendants' profits are attributable to their false and misleading "clinically proven," anti-aging, vitality, and health-benefit claims. But for Defendants' false "clinically proven" and anti-aging representations, the fair value of the Products would have been substantially lower.

12.     Put differently, Defendants' misrepresentations allowed them to overcharge consumers in the amount of the clinically-proven and anti-aging related price premium. Relatedly, Defendants' false and misleading representations induced reasonable consumers like Plaintiff into purchasing the Products.

13.     Had Plaintiff and all other similarly situated consumers known that, contrary to Defendants' representations, the Products were not clinically proven to provide the broad functional and consumer-perceptible health and anti-aging benefits conveyed by Defendants' advertising, they would have paid less for the Products or not purchased them at all.

14.     Plaintiff now seeks a return of the clinically proven and anti-aging related premiums that Defendants charged for their Products on behalf of Plaintiff and all other similarly situated purchasers. Plaintiff asserts claims on behalf of Plaintiff and all other similarly situated purchasers of Defendants' Products for: (i) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (ii) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; (iii) fraud; (iv) unjust enrichment; and (v) breach of express warranty.

## PARTIES

15.     Plaintiff Melissa Jacobs is a citizen of California and resides in Newport Beach, California. Plaintiff purchased Tru Niagen 300mg in April 2026 from Amazon.com for approximately $49 plus tax.

16.     Plaintiff is a health and wellness advocate and owns and operates a Pilates studio. Longevity, healthy aging, and wellness are important to Plaintiff. Prior to purchasing the Products, Plaintiff reviewed the Tru Niagen Amazon product page

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    3

and related advertising, including representations that the Products were "clinically proven," supported "Brain Function," "Anti Aging," "Cell Regeneration," "Cellular Energy," and related anti-aging and health benefits, and that Tru Niagen was "clinically proven to be one of the safest and most efficient boosters of NAD+ levels, shown to increase NAD+ over 50% in just 2 weeks with daily use." Plaintiff further reviewed the "About this item" section of the Amazon product listing, which described the Products as "A COMPLETE ANTI AGING SUPPLEMENT" that "can help reduce aging-related health concerns" and represented that the Products support "brain health, muscle health and recovery, heart health, cellular energy and repair." Plaintiff reasonably understood these representations to mean that the Products had been clinically demonstrated through rigorous human science to provide meaningful real-world anti-aging and health benefits across all of the described health categories, and Plaintiff relied upon these representations when purchasing the Products. Had Defendants not made these representations, Plaintiff would not have purchased the Products or would have paid substantially less for them. Plaintiff desires to purchase products like the Products in the future and would consider purchasing the Products again if Plaintiff could trust that Defendants' representations concerning the Products were truthful and non-misleading.

17.    Defendant Niagen Bioscience, Inc. is a Delaware corporation with headquarters in California. Defendant Niagen Bioscience manufactures, markets, distributes, advertises, and sells the Products.

18.    Defendant ChromaDex, Inc. is a California corporation with headquarters in Los Angeles, California. ChromaDex licenses, markets, distributes, advertises, and sells the Products nationwide, including into California.

## JURISDICTION AND VENUE

19.    This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    4

class actions where, as here: (a) there are 100 or more members in the proposed Class; (b) some members of the proposed Class have a different citizenship from the Defendants; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate.  *See* 28 U.S.C. § 1332(d)(2) and (6).

20.　This Court has personal jurisdiction over Defendants because they market and sell the Products in California, maintain substantial business operations in California, and purposefully avail themselves of the California market.

21.　Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants transact significant business within this District; Plaintiff resides within this District; and a substantial part of the events giving rise to Plaintiff's claims took place within this District.

## FACTUAL ALLEGATIONS

### A.　The NAD+ and Longevity Supplement Market

22.　Over the past few decades, a growing and vocal number of consumers have expressed serious concern with the long-term health effects of aging, including cognitive decline, fatigue, skin degradation, and loss of vitality.  In response, a massive "longevity," anti-aging, and cellular-health supplement industry has emerged. Consumers increasingly seek dietary supplements marketed as capable of improving cellular health, slowing aging, increasing vitality, improving cognition, enhancing energy production, supporting physical and mental recovery, and extending one's life span.

23.　The NAD+ supplement market has become one of the fastest-growing sectors within the dietary supplement industry as a whole.

24.　Products marketed as capable of increasing NAD+ levels are heavily advertised using scientific and medical terminology concerning "cellular repair," "healthy aging," "cellular energy," "mitochondrial function," "longevity," and anti-aging science.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED　　　　　5

25. Consumers place substantial weight on representations that products are "clinically proven," "scientifically backed," or supported by *human* clinical studies.

26. Consumers are willing to pay a premium for products whose effects are represented as "clinically proven" and scientifically demonstrated to provide meaningful anti-aging and health benefits. Being able to make "clinically proven" and anti-aging claims is therefore a substantial boon for supplement manufacturers, and Defendants know it. Such claims signal to consumers that the Products are supported by rigorous clinical science and capable of delivering meaningful real-world health benefits.

27. Defendants intentionally positioned Tru Niagen as a premium, scientifically validated longevity product supported by cutting-edge clinical science. Compared to ordinary dietary supplements, Tru Niagen was sold at materially higher prices because consumers believed they were purchasing a supplement that had been clinically demonstrated through rigorous human science to provide meaningful anti-aging and health-support benefits.

28. Consumers are particularly susceptible to such advertising because aging, cognitive decline, energy loss, vitality decline, and long-term health deterioration are deeply important personal concerns affecting daily life and future health.

29. Defendants profited enormously from consumer demand for longevity and anti-aging products and from the growing public fascination with NAD+ science and healthy aging interventions. As of May 2026, Defendants are selling ten thousand or more units of the Products each month on Amazon alone.

**B. NAD+, Nicotinamide Riboside, and Biomarker Science**

30. Nicotinamide adenine dinucleotide ("NAD+") is a coenzyme involved in numerous cellular metabolic processes.

31. Nicotinamide riboside ("NR"), the active ingredient in Tru Niagen, is marketed as a precursor capable of increasing NAD+ levels within the body.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    6

32.    Defendants aggressively marketed Tru Niagen as capable of increasing NAD+ levels and thereby improving numerous aspects of health and aging.

33.    Defendants repeatedly made broad representations, linking increases in NAD+ levels to positive health effects concerning vitality, healthy aging, cellular repair, cognitive support, cardiovascular health, immune support, muscle recovery, energy production, and anti-aging benefits.

34.    Defendants' marketing campaign conveyed to reasonable consumers that Tru Niagen had been tested in clinical settings and demonstrated meaningful real-world health improvements.

35.    Defendants' advertising relied heavily upon "clinically proven" messaging and references to human clinical studies. Defendants also used testimonials, influencer marketing, and social media content conveying real-world improvements in vitality, energy, cognition, recovery, and healthy aging.

36.    Reasonable consumers understand such representations to mean that the Products have been clinically proven through competent and reliable human clinical science to provide meaningful functional health benefits.

37.    But biomarker changes alone do not establish that consumers will experience meaningful or functional health improvements.

38.    Likewise, cellular or mechanistic findings do not establish clinically meaningful anti-aging, vitality, cardiovascular, cognitive, immune, recovery, or energy-related benefits in humans.

39.    Defendants nevertheless blurred and erased these distinctions throughout their advertising campaign. Defendants repeatedly paired references to NAD+ increases and cellular effects with broader health and anti-aging claims conveying real-world consumer benefits. Defendants thereby falsely conveyed to reasonable consumers that the Products had been clinically demonstrated to provide meaningful health and anti-aging effects.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    7

40.    Defendants possessed superior knowledge regarding the limitations of the underlying clinical evidence and the distinction between biomarker findings and clinically demonstrated functional health outcomes. Defendants nevertheless chose to market the Products using broad "clinically proven," anti-aging, vitality, and health-benefit messaging in order to capitalize on consumer demand for scientifically validated longevity products.

**C.    Defendants' Products and Advertising**

41.    At issue in this action are Defendants' Tru Niagen products, including the Tru Niagen 300mg product purchased by Plaintiff and all substantially similar Tru Niagen products marketed using the same or substantially similar claims.



**Figure 1**: Tru Niagen Amazon Product Page[1]

_____

[1] Screenshot captured on May 25, 2026, from: https://www.amazon.com/TRU-NIAGEN-Patented-Supplement-Efficient/dp/B07TK5K5TQ/ref=sr_1_1?crid=RKZ8HJNT9I6R&dib=eyJ2IjoiMSJ9.b5fPFePFVYaYznobMv9yDhuMFUI6Tsa7zb5iohT-LRbkqzvtWkvPuashxDrdD5bZsYLLnxuXyyVyGC_JyPLjeRkZMESeIqTNcnaFc8DX-tRu6QCba8p8gfD6ncj_9VjB9lVLE9q0f-9kOBrk8gjnOkG3pumFA71sBahpRcBMquu9rvM6XC0-j72Nc7m_D7nWSB0Jt4ZwLrETTRIexEauzIXjyVkLTocN640awEgXJqihXxbnqKmZZ06HUEOZDzYSfmbDeA_RFgku0h7jQSmmHXIm7mlhC0uqA0EKgX2iiMg.D9g3c48hkmbuKD_heU-

42.   Defendants crafted a common advertising campaign across their packaging, websites, Amazon listings, testimonials, influencer campaigns, podcasts, subscription programs, and digital advertising that paired "clinically proven" and human-clinical-science messaging with representations concerning anti-aging, vitality, cognition, cardiovascular health, immune health, cellular energy, recovery, and healthy aging. Through this advertising campaign, Defendants conveyed to reasonable consumers that the Products had been clinically demonstrated through rigorous human science to provide meaningful real-world anti-aging and health benefits. Defendants' advertising included, among other things, the following representations:

    (a)   Clinically proven to significantly increase NAD+ levels;

    (b)   Clinically proven to maintain NAD+ levels with daily use;

    (c)   representations linking NAD+ increases to heart health, brain health, immune health, vitality, recovery, and healthy aging;

    (d)   representations concerning "cellular energy," "cellular repair," "healthy aging," and longevity;

    (e)   anti-aging representations, both express and implied; and

    (f)   representations conveying that the Products were capable of producing meaningful functional and perceptible health improvements.

V_taMKHBi4pdx7jxwAQicKTY&dib_tag=se&keywords=tru%2Bniagen&qid=1779645600&sprefix=truniage%2Caps%2C434&sr=8-1&th=1

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED        9

**Figure 2**: Tru Niagen Amazon Advertising Conveying Anti-Aging and Cellular Health Benefits[2]

43. Defendants also marketed the Products using "cellular repair," "longevity," "cellular energy," "healthy aging," and similar scientific and anti-aging terminology.

44. Defendants further used testimonials and influencer advertising conveying real-world improvements in vitality, energy, recovery, cognition, and anti-aging benefits.

---

[2] Screenshot captured on May 25, 2026, from: https://www.amazon.com/TRU-NIAGEN-Patented-Supplement-Efficient/dp/B07TK5K5TQ/ref=sr_1_1?crid=RKZ8HJNT9I6R&dib=eyJ2IjoiMSJ9.b5fPFePFVYaYznobMv9yDhuMFUI6Tsa7zb5iohT-LRbkqzvtWkvPuashxDrdD5bZsYLLnxuXyyVyGC_JyPLjeRkZMESeIqTNcnaFc8DX-tRu6QCba8p8gfD6ncj_9VjB9lVLE9q0f-9kOBrk8gjnOkG3pumFA71sBahpRcBMquu9rvM6XC0-j72Nc7m_D7nWSB0Jt4ZwLrETTRIexEauzIXjyVkLTocN640awEgXJqihXxbnqKmZZ06HUEOZDzYSfmbDeA_RFgku0h7jQSmmHXIm7mlhC0uqA0EKgX2iiMg.D9g3c48hkmbuKD_heU-V_taMKHBi4pdx7jxwAQicKTY&dib_tag=se&keywords=tru%2Bniagen&qid=1779645600&sprefix=truniage%2Caps%2C434&sr=8-1&th=1

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    10

45.    Reasonable consumers would understand Defendants' representations to mean that the Products had been clinically demonstrated in humans to provide meaningful real-world anti-aging and health benefits, rather than merely affecting laboratory biomarkers or cellular mechanisms without corresponding functional outcomes.

46.    Defendants made the same implied representation throughout their advertising campaign: namely, that the Products had been clinically demonstrated through rigorous human science to provide meaningful real-world health and anti-aging benefits. In reality, they had not.

**D.    NAD and NARB Determined Defendants' Claims Were False and Misleading**

47.    Following a challenge brought by Reus Research LLC, the National Advertising Division ("NAD") of the Better Business Bureau reviewed Defendants' challenged advertising claims concerning Tru Niagen. NAD evaluated Defendants' "clinically proven" establishment claims, including the claim that Tru Niagen was "clinically proven to significantly increase NAD+ levels, and help maintain them with daily use." The NAD concluded that the evidence relied upon by Defendants did not support the broad clinically demonstrated anti-aging and health-benefit messages conveyed to consumers.

48.    The NAD further concluded that Defendants improperly linked NAD+ biomarker increases to broad health-related benefits. And the NAD specifically recognized that claims framed in cellular or mechanistic language may nevertheless convey broader consumer-perceptible health benefits depending on context, surrounding claims, testimonials, and related advertising.

49.    The NAD also determined that Defendants' advertising conveyed false and misleading messages concerning cardiovascular health, cognitive health,

immune health, metabolism, anti-aging, vitality, exercise, muscle recovery, and cellular repair.



**Figure 3**: Additional Tru Niagen Amazon Advertising Claims and Consumer Messaging[3]

50. The NAD additionally determined that certain testimonials conveyed false and misleading messages regarding improvements in health, vitality, and functional benefits.

51. The NAD further reviewed Defendants' influencer marketing practices and recommended that Defendants ensure material connections were clearly and conspicuously disclosed.

---

[3] Screenshot captured on May 25, 2026, from: https://www.amazon.com/TRU-NIAGEN-Patented-Supplement-Efficient/dp/B07TK5K5TQ/ref=sr_1_1?crid=RKZ8HJNT9I6R&dib=eyJ2IjoiMSJ9.b5fPFePFVYaYznobMv9yDhuMFUI6Tsa7zb5iohT-LRbkqzvtWkvPuashxDrdD5bZsYLLnxuXyyVyGC_JyPLjeRkZMESeIqTNcnaFc8DX-tRu6QCba8p8gfD6ncj_9VjB9lVLE9q0f-9kOBrk8gjnOkG3pumFA71sBahpRcBMquu9rvM6XC0-j72Nc7m_D7nWSB0Jt4ZwLrETTRIexEauzIXjyVkLTocN640awEgXJqihXxbnqKmZZ06HUEOZDzYSfmbDeA_RFgku0h7jQSmmHXIm7mlhC0uqA0EKgX2iiMg.D9g3c48hkmbuKD_heU-V_taMKHBi4pdx7jxwAQicKTY&dib_tag=se&keywords=tru%2Bniagen&qid=1779645600&sprefix=truniage%2Caps%2C434&sr=8-1&th=1

52.    During the proceeding, Defendants voluntarily agreed to discontinue certain challenged claims, including reproductive health, sleep improvement, and "Made in USA" claims.

53.    Defendants appealed the NAD's decision to the National Advertising Review Board ("NARB").

54.    On May 21, 2026, the NARB affirmed the NAD's findings and recommendations. The NARB agreed that Defendants' studies did not support the challenged "clinically proven" claims as conveyed to consumers. The NARB further determined that Defendants' challenged advertising improperly conveyed that biomarker increases translated into clinically demonstrated real-world health and anti-aging outcomes.



**Backed by gold standard science, quality, and safety**

**Efficacy backed by peer-reviewed published research**

Niagen® is supported by 45+ clinical studies demonstrating its safety and efficacy. These human studies form the foundation of our scientific evidence. Over 65% of registered ongoing or completed nicotinamide riboside trials use Niagen®.[2]

Partnership with 300+ institutions: We partner with top institutions like Mayo Clinic, National Institute on Aging, Harvard, and Cambridge.

Backed by independent research: Over 90% of peer-reviewed, published Niagen® studies are investigator-driven and third-party funded.

View studies and publications ⌄

**Figure 4**: Tru Niagen Website Claims Regarding NAD+, Anti-Aging, and Health Benefits[4]

55.    The NARB specifically determined that many of Defendants' claims went beyond cell-level mechanistic effects and falsely promised perceptible or functional health benefits that were not supported by the science relied upon by Defendants.

[4] Screenshot captured on May 25, 2026, from:
https://www.truniagen.com/products/tru-niagen-300mg

56.     The NARB further recommended discontinuation of anti-aging claims and testimonials communicating perceptible real-world improvements.

57.     The NARB additionally recommended discontinuation or modification of claims relating to heart health, brain health, immune health, vitality, muscle recovery, energy, and cellular repair. Defendants thereafter publicly stated that they would comply with the NARB's recommendations.

58.     As further illustrated in Figure 5, Defendants' Amazon listing described the Products as "A COMPLETE ANTI AGING SUPPLEMENT" supporting "brain health, muscle health and recovery, heart health, cellular energy and repair" — the precise health-benefit categories the NARB determined were unsupported — immediately following a "clinically proven" establishment claim, conveying to reasonable consumers that all such benefits had been clinically demonstrated.

**About this item**

- A COMPLETE ANTI AGING SUPPLEMENT - Support whole body wellness and boost cellular energy with Tru Niagen, a patented NAD+ supplement that supports the 37.2 trillion cells in your body Tru Niagen helps the production of nicotinamide adenine dinucleotide to promote healthy cell activity and can help reduce aging-related health concerns. Tru Niagen is clinically proven to be one of the safest and most efficient boosters of NAD+ levels, shown to increase NAD+ over 50% in just 2 weeks with daily use.

- VITAL FOR CELLULAR ENERGY - Tru Niagen supports your ability to stay healthy by boosting NAD+ levels, which naturally decline as you age. NAD+ is vital for cells to function and repair. It supports brain health, muscle health and recovery, heart health, cellular energy and repair, and lifestyle stress management. Patented Tru Niagen is more efficient at raising NAD+ than other NAD+ precursors such as NMN, niacinamide, or niacin.

- TRU STORY: WITHOUT NAD, CELLS DIE - Our bodies naturally decrease in NAD+, with up to a 65% decline between ages 30-70. Effects of metabolic stress and time on your cells can accelerate aging, which leads to many health concerns. Everyone's body, stressors, and goals are different. Most clinical studies have used 1000mg daily. NAD+ decline begins in your 30s, it's recommended to start with 300mg daily. As you age and are exposed to more metabolic stressors, such as environmental factors or immune challenges, you can move to 1000mg daily. Always check with your healthcare provider for the best dose for you.

- TESTED FOR SAFETY, POTENCY, AND PURITY - Tru Niagen is one of the most well-studied, patented, supplements. Our patented ingredient Niagen has achieved regulatory acceptance by the US FDA for use in supplements: twice as an NDI (New Dietary Ingredient), and once as GRAS (Generally Recognized As Safe). Every batch is made in the United States with globally sourced ingredients and third-party tested by ISO/IEC accredited labs for potency, safety, and purity. Tru Niagen NAD+ capsules are vegetarian, gluten free, nut free, caffeine free, and have no artificial flavors or colors.

- SUPPORTED BY DECADES OF RESEARCH - Tru Niagen is one of the most well-researched patented supplements and is backed by a Nobel Prize winner, 50 owned and licensed patents, 500+ published scientific studies, 300+ global research collaborations, and 40+ clinical trials. Supported by decades of science and research, Tru Niagen is truly one-of-a-kind.

^ Show less

**Figure 5**: Tru Niagen Amazon "About This Item" Description Characterizing Product as "A Complete Anti Aging Supplement"[5]

E.    **But for Defendants' Misrepresentations, Plaintiff and the Proposed Class Would Have Paid Less for the Products**

59.    By falsely claiming that the Products were clinically proven and scientifically demonstrated to provide broad anti-aging and health benefits, Defendants were able to overcharge Plaintiff and the proposed Class members in the amount of a clinically-proven and anti-aging related premium associated with those

_____

[5] Screenshot captured on May 25, 2026, from: https://www.amazon.com/Patented-Booster-Supplement-More-Efficient/dp/B07TK5K5TQ?th=1

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    15

claims.

60.    Defendants' clinically proven and anti-aging claims appeared prominently on the webpages where the Products were sold, including Amazon.com and Defendants' own websites, and were uniformly presented to consumers at or near the point of purchase.

61.    Defendants' claims misled reasonable consumers. Defendants are among the most prominent participants in the NAD+ supplement marketplace, so consumers would reasonably believe Defendants' representations. Moreover, consumers do not and cannot independently evaluate the scientific validity of complex claims concerning NAD+, cellular repair, healthy aging, cognition, vitality, and anti-aging effects before purchasing dietary supplements.

62.    If Defendants had been truthful in their representations about the Products, namely, that the Products were not clinically proven to provide the broad health and anti-aging benefits conveyed by Defendants' advertising, then the market price of the Products would have been lower. Accordingly, Plaintiff and the proposed Class paid for Defendants' Products at artificially inflated prices.\

## CLASS ALLEGATIONS

63.    ***Class Definition***.  Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) on behalf of herself and all other similarly situated consumers, and seeks to represent classes defined as:

> All natural persons Nationwide who purchased Defendants' Tru Niagen products during the applicable statutory period (the "Class").

> All natural persons who purchased Defendants' Tru Niagen products while in California during the applicable statutory period (the "California Class").

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    16

64. Excluded from the classes are governmental entities; Defendants; and Defendants' affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

65. Plaintiff reserves the right to modify or expand the definition of the classes to seek recovery on behalf of additional persons as facts are learned in further investigation and discovery.

66. ***Numerosity.*** Members of the classes are so numerous that their individual joinder herein is impracticable. The precise number of Class members and their identities are unknown to Plaintiff at this time but will be determined through discovery of Defendants' records. Class members may be notified of the pendency of this action by mail, email, publication, and/or other media, including social media.

67. ***Commonality and Predominance***. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common legal and factual questions include, but are not limited to:

    a. Whether Defendants' "clinically proven" and anti-aging claims were false and/or misleading;

    b. Whether Defendants' representations regarding the Products included false and/or misleading statements and/or omissions;

    c. Whether Defendants knowingly made false and misleading "clinically proven" and health-benefit claims concerning the Products;

    d. Whether Defendants' representations were material;

    e. Whether an objectively reasonable consumer would have been misled by Defendants' representations; and

f.     Whether Defendants' claims allowed them to charge more for the Products than they otherwise could have.

68.     *Typicality.*  Plaintiff's claims are typical of the claims of the proposed classes because Plaintiff, like all members of the classes, was induced by Defendants' false and misleading warranties to purchase Defendants' Products without knowing that the Defendants' claims about the Products were false and misleading.

69.     The representative Plaintiff, like all members of the classes, has been damaged by Defendants' misconduct in the very same way as the members of the classes.

70.     Further, the factual bases of Defendants' misconduct are common to all members of the classes and represent a common thread of misconduct resulting in injury to all members of the classes.

71.     *Adequacy*.  Plaintiff is an adequate representative of the classes Plaintiff seeks to represent because Plaintiff's interests do not conflict with the interests of the members of the classes; Plaintiff has retained counsel competent and experienced in prosecuting class actions; and Plaintiff intends to prosecute this action vigorously.

72.     The interests of the members of the classes will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

73.     *Superiority*.  A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the classes.

74.     Each individual member of the classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.

75.     Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also represents a potential for inconsistent or contradictory judgments.

76. By contrast, the class-action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.

77. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Violations of California's Unfair Competition Law ("UCL")
### Business & Professions Code § 17200, *et seq.*

78. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

79. Plaintiff brings this claim individually and on behalf of the members of the Nationwide class and the California Class against Defendants.

80. This claim is brought under the laws of California.

81. Defendants violated California's UCL by engaging in unlawful, fraudulent, and unfair conduct (*i.e.*, violating each of the three prongs of the UCL).

*The Unlawful Prong*

82. Defendants engaged in unlawful conduct by disseminating false and misleading advertising and false establishment claims in violation of California law and public policy prohibiting deceptive consumer advertising.

*The Fraudulent Prong*

83. As alleged in detail above, Defendants misrepresented material facts about the Products, including by falsely representing to consumers that the Products were clinically proven and scientifically demonstrated to provide meaningful anti-aging and health benefits.

84. Defendants, as manufacturers, marketers, licensors, distributors, and sellers of the Products, were in a position to know, and did know, the true nature and limitations of the science underlying the Products, but nevertheless affirmatively

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    19

represented that the Products provided clinically proven and scientifically demonstrated health and anti-aging benefits.

85.    As a result of these false and misleading practices, Defendants induced Plaintiff and the members of the California Class to purchase the Products that Plaintiff and the California Class would not have purchased, or would have paid substantially less for, had Defendants been truthful.

*The Unfair Prong*

86.    Defendants' conduct was unfair because, by claiming that the Products were clinically proven and scientifically demonstrated to provide meaningful anti-aging and health benefits, Defendants deceived consumers into believing that the Products had been rigorously demonstrated through human clinical science to provide such benefits, even though they had not.

87.    This conduct was unfair because it led Plaintiff and the members of the California Class to purchase the Products that they otherwise would not have purchased, or would have paid substantially less for, had they not been advertised as clinically proven and scientifically demonstrated.

88.    Defendants' misleading practices also gave Defendants an unfair advantage over competitors in the NAD+ and longevity supplement marketplace. Plaintiff and the California Class members could not reasonably have avoided the injury because only Defendants possessed the underlying scientific information concerning the Products.

89.    Defendants' false and misleading conduct was intended to induce reliance, and Plaintiff and the members of the California Class saw, read, and reasonably relied upon Defendants' false and misleading representations. Defendants' deceptive, misleading, and unfair conduct was a substantial factor in Plaintiff's and the California Class's purchasing decisions.

90.    Defendants' misrepresentations were a substantial factor and proximate cause of the damages and losses suffered by Plaintiff and the California Class.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    20

Plaintiff and the California Class have suffered harm as a result of Defendants' violations of the UCL because they incurred charges and/or paid monies they otherwise would not have incurred or paid had Defendants advertised the Products truthfully.

***

91. There was no benefit to consumers or competition from Defendants' false and misleading "clinically proven" and anti-aging representations. Plaintiff and the members of the California Class suffered harm because they incurred charges and paid monies they otherwise would not have paid had Defendants advertised the Products truthfully.

## COUNT II
### Violations of California's False Advertising Law ("FAL")
### Business & Professions Code § 17500, *et seq.*

92. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

93. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and the California Class.

94. This claim is brought under the laws of California.

95. California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.,* makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or service, . . . or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

96. During the applicable statutory period, Defendants committed acts of false advertising, as defined by the FAL, by making false and misleading

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    21

representations concerning the Products' clinically proven and scientifically demonstrated anti-aging and health benefits.

97. Defendants knew or should have known, through the exercise of reasonable care, that their claims were false and misleading.

98. Defendants' actions in violation of the FAL were false and misleading such that the general public was likely to be deceived.

99. As a direct and proximate result of these acts, consumers have been harmed, including Plaintiff and the members of the California Class. Plaintiff and the members of the California Class suffered injury and actual out-of-pocket losses because: (a) they would not have purchased the Products or would have paid substantially less for them absent Defendants' false advertising; (b) they paid increased prices for the Products based on Defendants' false advertising; and (c) the Products did not confer the value promised because they were not clinically proven to provide the broad anti-aging and health benefits conveyed by Defendants' advertising.

## COUNT III
### Fraud

100. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

101. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Defendants under the laws of California and states with materially similar laws.

102. As alleged in detail above, Defendants falsely represented that the Products were clinically proven and scientifically demonstrated to provide meaningful anti-aging and health benefits.

103. Defendants were in a position to know, and did know, the true nature and limitations of the science underlying the Products, but nevertheless affirmatively represented that the Products were clinically proven and scientifically demonstrated.

104.   Defendants knew that consumers would rely on their representations concerning clinical proof, anti-aging effects, and scientifically demonstrated health benefits when deciding whether to purchase the Products.

105.   Defendants' misrepresentations, upon which Plaintiff and the members of the Class relied, were intended to induce, and actually did induce, Plaintiff and the members of the Class to purchase the Products.

106.   Defendants induced Plaintiff and the members of the Class to purchase the Products that Plaintiff and the members of the Class would not have purchased, or would have paid substantially less for, had Defendants been truthful about whether the Products were clinically proven and scientifically demonstrated to provide meaningful anti-aging and health benefits.

107.   Defendants' fraudulent actions caused damages to Plaintiff and the Class who are entitled to damages and other legal and equitable relief as a result.

## COUNT IV
### Unjust Enrichment

108.   Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

109.   Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Defendants under the laws of California and states with materially similar laws.

110.   As alleged in detail above, Defendants knowingly accepted and retained benefits from Plaintiff and the Nationwide Class through the purchase of the Products.

111.   Substantial benefits were conferred upon Defendants by Plaintiff and the members of the Nationwide Class, and Defendants knowingly and voluntarily accepted and retained those benefits under inequitable circumstances.

112.   Defendants either knew or should have known that the payments rendered by Plaintiff and the Nationwide Class were given and received with the

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    23

expectation that the Products were clinically proven and scientifically demonstrated to provide meaningful anti-aging and health benefits.

113.   It would be inequitable for Defendants to retain the benefits of those payments under these circumstances.

**COUNT V**
**Breach of Express Warranty**

114.   Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and the California Class against Defendants under the laws of California.

115.   As alleged in detail above, Defendants expressly warranted that the Products were clinically proven and scientifically demonstrated to provide meaningful anti-aging and health benefits.

116.   Defendants' affirmations of fact and promises included, among other things, representations that the Products were "clinically proven," scientifically validated, and capable of providing anti-aging, vitality, cognitive, cardiovascular, immune, cellular-energy, recovery, and related health benefits.  Specifically, Defendants marketed the Products as "A COMPLETE ANTI AGING SUPPLEMENT" supporting "brain health, muscle health and recovery, heart health, cellular energy and repair."  Defendants further used testimonials and influencer advertising conveying real-world improvements in vitality, energy, recovery, cognition, and anti-aging benefits.

117.   These affirmations and promises became part of the basis of the bargain between Defendants and Plaintiff and the members of the Nationwide Class.

118.   In fact, the Products did not conform to Defendants' affirmations and promises because the challenged claims were false and misleading.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that the Court grant Plaintiff and all members of the proposed Class the following relief against Defendants:

(a)  An order certifying the Classes and naming Plaintiff's attorneys as Class Counsel to represent the members of the Classes;

(b)  An order declaring that Defendants' conduct violates the statutes and common law referenced herein;

(c)  Compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(d)  Prejudgment interest on all amounts awarded;

(e)  Restitution and all other forms of equitable monetary relief;

(f)  An order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(g)  Granting such other and further relief as many be just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated:  May 28, 2026               **BURSOR & FISHER, P.A**.

By:  __/s/ L. Timothy Fisher__
          L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
          lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C**.
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    25