CHELSEA V. SAMUELS (SBN 315257)
csamuels@proskauer.com
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 557-2900
Facsimile: (310) 557-2193

BALDASSARE VINTI (*pro hac vice* pending)
bvinti@proskauer.com
JEFFREY H. WARSHAFSKY (*pro hac vice* pending)
jwarshafsky@proskauer.com
Q. JENNIFER YANG (*pro hac vice* pending)
jyang@proskauer.com
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

*Attorneys for Defendants Niagen Bioscience, Inc. and Chromadex, Inc.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MELISSA JACOBS, CARYN HART, CLARE ERSLEV, and ANISE IVEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NIAGEN BIOSCIENCE, INC. and CHROMADEX, INC.,<br><br>Defendants. | Case No. 8:26-cv-01365-FWS-KES<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date: December 3, 2026<br>Time: 10:00 AM<br>Judge: Hon. Fred W. Slaughter<br>Courtroom: 10D |

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

FACTUAL BACKGROUND ..... 3

ARGUMENT ..... 7

I. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6) ..... 7

A. Rule 12(b)(6) Legal Standard ..... 7

B. Plaintiffs' Claims All Fail Because They Do Not Plausibly Allege Falsity ..... 8

C. Plaintiffs' Allegations Based on the Structure/Function Claims Are Preempted ..... 12

D. The Unjust Enrichment Claim Independently Fails ..... 15

E. The Breach of Express Warranty Claim Independently Fails ..... 15

F. Plaintiffs Fail to State a Claim for Equitable Monetary Relief ..... 15

G. Plaintiffs' Claims Based on Unidentified Advertising Independently Fail Under Rule 9(b) ..... 16

II. PLAINTIFFS LACK STANDING TO BRING CERTAIN CLAIMS UNDER RULE 12(B)(1) ..... 17

A. Rule 12(b)(1) Legal Standard ..... 17

B. Plaintiffs Lack Standing to Assert Claims Related to Products They Did Not Purchase ..... 18

C. Plaintiffs Lack Standing to Assert Claims Related to Advertising They Did Not See and Rely On ..... 19

D. Plaintiffs Lack Standing to Seek Injunctive Relief ..... 19

E. Plaintiffs Lack Standing to Assert Claims Under Laws of Other States ..... 21

CONCLUSION ..... 21

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 7

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .......... 15

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) .......... 7

*Bates v. UPS*,
511 F.3d 974 (9th Cir. 2007) .......... 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 7

*Blum v. Yaretsky*,
457 U.S. 991 (1982) .......... 17

*Bowler v. Nestlé Health Sci. U.S., LLC*,
763 F. Supp. 3d 996 (C.D. Cal. 2025) .......... 13, 14

*Briseno v. ConAgra Foods, Inc.*,
2011 WL 13128869 (C.D. Cal. Nov. 23, 2011) .......... 16

*Brown v. SharkNinja Operating LLC*,
2024 WL 4563387 (D.N.J. Oct. 23, 2024) .......... 12

*Bruton v. Gerber Prods. Co.*,
2018 WL 1009257 (N.D. Cal. Feb. 13, 2018) .......... 20

*Carrillo v. Wm. Wrigley Jr. Co.*,
2010 WL 11596523 (C.D. Cal. Apr. 15, 2010) .......... 11

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......... 19–20

*Dachauer v. NBTY, Inc.*,
913 F.3d 844 (9th Cir. 2019) .......... 8, 13, 14

*Eclectic Props. E. v. Marcus & Millichap*,
751 F.3d 990 (9th Cir. 2014) .......................................................................... 7

*Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC)*,
528 U.S. 167 (2000)........................................................................................ 17

*Gaul v. Bayer Healthcare LLC*,
2013 WL 12181778 (D.N.J. Feb. 11, 2013)............................................... 11–12

*Greenberg v. Target Corp.*,
985 F.3d 650 (9th Cir. 2021) ..................................................................... 12, 14

*In re Ariz. Theranos, Inc. Litig.*,
256 F. Supp. 3d 1009 (D. Ariz. 2017), *recons. granted in part on other grounds*,
2017 WL 4337340 (D. Ariz. Sept. 29, 2017) ..................................................... 15

*In re Ferrero Litig.*,
794 F. Supp. 2d 1107 (S.D. Cal. 2011) ............................................................ 19

*In re Flash Memory Antitrust Litig.*,
643 F. Supp. 2d 1133 (N.D. Cal. 2009)............................................................. 21

*In re Glumetza Antitrust Litig.*,
611 F.Supp.3d 848 (N.D. Cal. Mar. 5, 2020) ..................................................... 21

*In re iPhone Application Litig.*,
6 F. Supp. 3d 1004 (N.D. Cal. 2013)................................................................. 17

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ..................................................................... 7, 16

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......................................................................... 4

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ........................................................................ 13

*Kwan v. SanMedica Int'l*,
854 F.3d 1088 (9th Cir. 2017) ...................................................................... 1, 8

*Lanovaz v. Twinings N. Am., Inc.*,
2016 WL 4423846 (N.D. Cal. Sept. 2, 2016), *aff'd*, 726 F. App'x 590
(9th Cir. 2018) ................................................................................................ 20

*Lewis v. Casey*,
518 U.S. 343 (1996)........................................................................................ 17

*Lorona v. Ariz. Summit Law Sch., LLC*,
188 F. Supp. 3d 927 (D. Ariz. 2016) .............................................................. 8

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)........................................................................................ 17

*Obillo v. i-Health Inc.*,
2025 WL 844389 (N.D. Cal. Mar. 18, 2025) ............................................ *passim*

*Rahman v. Mott's LLP*,
2018 WL 4585024 (N.D. Cal. Sept. 25, 2018).................................................. 20

*Ringler v. J.M. Smucker Co.*,
783 F. Supp. 3d 1229 (C.D. Cal. 2025) (Hwang, J.) ......................................... 18

*Rodriguez v. FCA US LLC*,
2023 WL 3150075 (C.D. Cal. Mar. 21, 2023) (Slaughter, J.)............................ 16

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........................................................................... 16

*Spaulding v. Wells Fargo Bank, N.A.*,
714 F.3d 769 (4th Cir. 2013) ............................................................................. 8

*State Farm Mut. Auto. Ins. Co. v. Carefree Land Chiropractic, LLC*,
2018 WL 6514797 (D. Md. Dec. 11, 2018), *recons. denied*, 2019 WL 4722675 (D. Md. Sept. 25, 2019) ............................................................................... 15

*Tubbs v. AdvoCare Int'l, LP*,
2017 WL 4022397 (C.D. Cal. Sept. 12, 2017), *aff'd*, 785 Fed. App'x 396 (9th Cir. 2019) .............................................................................................. 9

*Viggiano v. Hansen Natural Corp.*,
944 F. Supp. 2d 877 (C.D. Cal. 2013)............................................................. 15

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003) ........................................................................... 7

*Wilson v. Frito-Lay N. Am., Inc.*,
961 F. Supp. 2d 1134 (N.D. Cal. 2013)............................................................ 18

**CONSTITUTIONAL PROVISIONS**

Article III of the U.S. Constitution ........ 17

**STATUTES**

21 U.S.C. § 343(r)(6)(A)–(C) ........ 12

21 U.S.C. § 343-1(a)(5) ........ 12

Dietary Supplement Health and Education Act of 1994, Pub. L. No. 103-417, 108 Stat. 4325 ........ 2, 5, 12, 14

Cal. Com. Code § 2313(1)(a) ........ 15

**RULES**

Fed. R. Civ. P. 9(b) ........ 7, 16

Fed. R. Civ. P. 12(b)(1) ........ 17

Fed. R. Civ. P. 12(b)(6) ........ 7

**REGULATIONS**

21 C.F.R. § 101.93 ........ 12

**PRELIMINARY STATEMENT**

Stripped of its rhetoric, the Complaint alleges only that Defendants' advertising was not adequately substantiated, not that it was false. That distinction is fatal to Plaintiffs' claims, which uniformly depend on the premise that Defendants falsely advertised the efficacy of Tru Niagen, a dietary supplement containing nicotinamide riboside ("NR"), a precursor to nicotinamide adenine dinucleotide ("NAD+"). The Complaint makes the boilerplate assertion that the advertising is "false and misleading," but Plaintiffs plead no facts to plausibly support that inference. The Complaint does not point to clinical studies, medical publications, or any other scientific evidence finding that Tru Niagen does not perform as advertised.

Instead, the Complaint is premised on the allegation that "the studies that Defendants rely on to make [the challenged advertising] claims do not actually support the Products' claims." Consolidated Class Action Complaint ("Complaint" or "CCAC") ¶ 2. Disputing the validity of Defendants' scientific support is not enough. Controlling Ninth Circuit law bars private plaintiffs from suing based on allegations that there is a lack of adequate substantiation for advertising they viewed; plaintiffs must plead facts affirmatively showing that the challenged representations are actually "false or misleading." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1095–97 (9th Cir. 2017).

With no factual basis to plead falsity, Plaintiffs seek refuge in a report from the BBB National Programs' National Advertising Division ("NAD") recommending that Defendants alter certain Tru Niagen advertising. Critically, Plaintiffs point to no finding of falsity in that report. There is none. NAD is a private, voluntary, self-regulatory body that assesses whether an advertiser's proffered evidence adequately substantiates its claims. That is a fundamentally different standard from that imposed on private plaintiffs in court—who must plead that challenged advertising is false, not merely unsubstantiated—which is why courts have repeatedly rejected attempts to convert NAD reports into false advertising claims. *See, e.g.*, *Obillo v. i-Health Inc.*,

2025 WL 844389, at *8 (N.D. Cal. Mar. 18, 2025) (dismissing improper lack-of-substantiation claims that relied on an NAD report that "concluded only that the underlying study was unreliable").

The NAD Report confirms this. Contrary to the Complaint's repeated allegations that NAD determined Defendants' advertising was "false," the NAD Report never made that finding. NAD never found that NR is incapable of increasing NAD+ or producing the advertised cellular benefits, or that Tru Niagen otherwise does not confer any of the advertised benefits. NAD asked only whether Defendants' submitted studies adequately substantiated certain messages under its self-regulatory standards. And NAD found that Defendants' evidence *did* show Tru Niagen elevates NAD+ levels within hours. The Report therefore cannot support an inference that any of Defendants' advertising is *false*—NAD simply did not analyze falsity. Because Plaintiffs rely solely on the NAD Report, and plead no facts tending to support an inference of falsity, the entire case must be dismissed under Ninth Circuit precedent prohibiting lack-of-substantiation claims.

Plaintiffs' challenges to Tru Niagen's structure/function claims also fail for an additional independent reason: federal preemption. Statements that NR supports cellular energy, cellular repair, and heart, brain, immune, and muscle functions describe the role of a dietary ingredient in the structure or function of the human body. The Dietary Supplement Health and Education Act ("DSHEA") expressly permits these claims. Plaintiffs, relying again on the NAD Report, argue these statements imply broader promises of perceptible, whole-body benefits. But NAD itself stated that its analysis did not address the FDA's structure/function framework. In contrast, district courts must apply that framework. And the FDCA expressly preempts state law claims that impose requirements "not identical to" federal standards governing structure/function claims. Plaintiffs cannot use state consumer protection laws to prohibit what federal law expressly allows.

For these and other reasons, the Complaint should be dismissed in its entirety.

## FACTUAL BACKGROUND

Tru Niagen (the "Product") is a dietary supplement containing NR, a precursor to NAD+. CCAC ¶¶ 33, 45. NAD+ is an essential coenzyme found in every living cell that the body uses in cellular energy production, gene activity, stress and immune responses, and DNA repair. *Id.* ¶¶ 2, 30. Defendants Niagen Bioscience, Inc. and ChromaDex, Inc. manufacture, market, and sell Tru Niagen through Defendants' website, Amazon, and brick-and-mortar retailers. *Id.* ¶¶ 6, 20–21. Tru Niagen is backed by over 500 published scientific studies, over 300 global research collaborations, and over 40 clinical studies that demonstrate its safety and efficacy. *Id.* ¶¶ 57, 59, 60.

The Complaint challenges two categories of advertising. First, Plaintiffs challenge statements that Tru Niagen increases NAD+ levels, including statements that it is "clinically proven to increase NAD+," and "clinically proven to be one of the safest and most efficient boosters of NAD+ levels." *Id.* ¶¶ 56, 57, 59, 60, 61.

Second, Plaintiffs challenge statements that these increased NAD+ levels support healthy aging by supporting structures and functions of the body, including claims that the production of NAD+ "promote[s] healthy cell activity," and that "NAD+ is vital for cells to function and repair" and "supports brain health, muscle health and recovery, heart health, cellular energy and repair" (collectively, the "Structure/Function Claims"). *Id.* ¶¶ 56, 59.

Together, Plaintiffs allege that this advertising conveys that the Product "had been clinically demonstrated through rigorous human science to provide meaningful real-world anti-aging and health benefits." *Id.* ¶ 62; *see also id.* ¶¶ 2, 38, 46-50, 53, 56-61, 63-64.[1] Plaintiffs do not allege that the Product does not increase NAD+ levels, do not allege that increased NAD+ does not support the structures and functions of the body described in the advertising, and do not identify any study or

[1] The Complaint also alleges Defendants made representations concerning "vitality," "longevity," and "immune health." *See, e.g.*, CCAC ¶¶ 56, 62. However, these representations do not appear in the advertising identified in the Complaint.

scientific evidence that purports to demonstrate the Product does not confer any of these or other advertised "anti-aging and health benefits." To the contrary, the Complaint acknowledges that "NAD+ is a vital coenzyme found in the body's cells that helps the body convert food into energy and repair our cellular DNA," "[t]he body needs NAD+ to convert food into energy, regulate gene activity, and coordinate the body's stress and immune responses," and that "[l]ower NAD+ levels have been linked to various age-related changes, such as muscle loss and fatigue, metabolic issues and cognitive decline, among others." *Id.* ¶¶ 2, 30-31. Plaintiffs assert only that research concerning NAD+ supplements remains "limited or inconclusive," and that biomarker changes and cellular and mechanistic findings "do not establish" that consumers will experience certain health benefits. *Id.* ¶¶ 35, 51–52. On their face, these are allegations of lack of substantiation, not falsity.

With no scientific evidence that the Product does not confer the advertised benefits, the Complaint relies instead on reports from NAD and its reviewing body, the National Advertising Review Board ("NARB"), stemming from a challenge brought by a competitor, Reus Research, to attempt to support its allegations of falsity. *Id.* ¶¶ 7–10, 65–77. NAD and NARB were established by the advertising industry as an independent system of self-regulation. Ex. 1 ("NAD Report") at 1.[2] NAD reviews national advertising in response to competitor challenges and issues recommendations, which may then be appealed to NARB. *Id.*; Ex. 2 ("NARB Report"). Unlike in court, NAD and NARB do not place the burden on the challenger to demonstrate that the advertising at issue is false or misleading. The exact opposite: NAD and NARB require that the advertiser possess a reasonable basis for its

[2] All exhibits are attached to the accompanying Declaration of Q. Jennifer Yang. The Complaint cites and relies upon the NAD and NARB Reports, and thus incorporates them by reference. *See* CCAC ¶¶ 7–10, 65–78; *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (incorporation is appropriate where the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim"); *Obillo*, 2025 WL 844389, at *2 (considering the full NAD report where the complaint expressly referenced and relied upon it as the basis for alleging the challenged advertising was false).

advertising claims and, in the context of health-related claims like those at issue here, that the advertiser affirmatively support its claims with competent and reliable scientific evidence. NAD Report at 6–7; NARB Report at 16.

In response to the NAD challenge, Niagen submitted ten clinical studies to show that NR supplementation increases NAD+ levels. NAD Report at 8-11. Based on these studies, NAD found that "[t]he record demonstrates that NR supplementation can increase NAD+ levels under certain tested conditions," that "a single dose of NR can acutely raise NAD+ levels," and that the statement that "Tru Niagen begins elevating NAD+ levels within hours of taking your first dose" was supported. *Id.* at 9, 11–12. However, "[b]ecause the studies vary substantially in population, design, duration, dosing, and results," NAD recommended that Niagen discontinue a claim that the Product significantly increases and maintains elevated NAD+ levels. *Id.* at 11-12; *see also* NARB Report at 17 (agreeing with NAD's conclusions about "shortcomings and/or limitations" in the submitted studies).

In the NAD proceeding, Reus Research also argued that "Niagen's advertising suggests its Tru Niagen product provides sweeping health benefits, including enhanced heart health, improved brain function, stronger immunity, muscle and fitness health, anti-aging effects, increased energy, and better metabolic performance." NAD Report at 12. Niagen noted that the challenged claims—such as "maintains cellular energy production," "supports cellular health," and similar claims across heart, brain, immune, muscle, aging, and metabolic performance categories—are permissible structure/function claims under federal law. *Id.* at 12-13. NAD, however, stated that its analysis did not turn on the classification of advertising claims under the FDA's structure/function framework. *Id.* at 14; *see also* NARB Report at 4-5 & 16 ("the statutory DSHEA structure/function standard is addressed to the Food and Drug Administration and its regulations, not to advertising standards for health claims"). The NAD Report also noted that Niagen presented "extensive mechanistic and biomarker evidence describing NAD+ biology and NR metabolism," and "a

substantial body of observational, correlational, and mechanistic research showing that NAD+ levels fall sharply during immune, metabolic, or inflammatory stress, and are associated with cellular energy production, mitochondrial function, neuroprotection, and DNA repair." NAD Report at 13-14. NAD recognized that this evidence "helps explain plausible biochemical pathways," but found it did not support messages about broader health benefits beyond mechanistic effects on the structure/function of the body. NAD Report at 15. NARB subsequently affirmed NAD's recommendations and Niagen—while making clear that it disagreed with these recommendations—agreed to comply and modify its advertising accordingly. CCAC ¶¶ 73–77; NARB Report at 18.

Notably, Reus Research as the challenger in the NAD and NARB proceedings did not submit any scientific evidence that affirmatively demonstrated that any of Niagen's advertising was false, and neither NAD nor NARB found that any such evidence exists. Rather, their recommendations rested solely on their view that the studies Niagen submitted to NAD did not adequately substantiate the messages they believed the advertising communicated.

Each named Plaintiff alleges purchasing the Tru Niagen 300 mg product: Jacobs and Ivey through Amazon.com from California and Arizona, respectively; Hart at a Sprouts Farmers Market location in California; and Erslev from the Tru Niagen website from Maryland. CCAC ¶¶ 16–19. Plaintiffs allege they would not have purchased the Products or would have paid substantially less had they known that the Products "were not 'clinically proven' to increase NAD+ levels, and were not proven to provide tangible health benefits, like cellular repair, anti-aging, heart health, and muscle health, among other claims." *Id.* ¶¶ 90, 99, 106, 113. On this basis, Plaintiffs seek to bring claims on behalf of all persons nationwide who purchased the Products during the applicable statutory period, as well as California, Maryland, and Arizona subclasses. *Id.* ¶¶ 15, 115.

# ARGUMENT

## I. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6)

### A. Rule 12(b)(6) Legal Standard

A complaint must be dismissed under Rule 12(b)(6) if it fails to state a cognizable legal theory, or to allege sufficient facts to support a legal theory, *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), or if it does not offer enough facts to state a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558–59 (2007). A claim is implausible "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Facts that are "merely consistent" with a defendant's liability cannot survive a motion to dismiss, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Only after the complaint has been "[t]rimmed of 'legal conclusions' and 'threadbare recitals of a cause of action'" does the court determine whether it "contains sufficient factual allegations to state a plausible entitlement to relief." *Eclectic Props. E. v. Marcus & Millichap*, 751 F.3d 990, 998 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). A court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Moreover, because Plaintiffs' claims are "grounded in fraud" (*see, e.g.*, CCAC ¶¶ 192–99), the heightened pleading requirements of Rule 9(b) apply, and plaintiff must allege "'the who, what, when, where, and how' of the misconduct charged." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

**B. Plaintiffs' Claims All Fail Because They Do Not Plausibly Allege Falsity.**

The Complaint's central defect is its failure to plead *any* facts to support its allegations that any of the challenged advertising is false. Instead, Plaintiffs rely solely on the NAD Report that "concluded that the evidence relied upon by Defendants did not support" certain advertising messages, and the NARB's related findings that the proffered studies "did not support" those messages. CCAC ¶¶ 65-78. Neither NAD nor NARB made any finding of falsity. That omission is dispositive and requires dismissal of all of Plaintiffs' claims in their entirety.

In court, private plaintiffs seeking to bring deceptive advertising claims under state consumer protection laws bear the burden of pleading that the challenged representations are false or misleading; they cannot state a claim merely by attacking Defendants' substantiation. *See Kwan*, 854 F.3d at 1095–97 (affirming dismissal where allegations that a supplement's "clinically tested" claims were deceptive were based only on lack of substantiation, not facts that pled actual falsity); *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 849 (9th Cir. 2019) (the burden is on private plaintiffs to prove that the challenged statements are false or misleading); *see also Lorona v. Ariz. Summit Law Sch., LLC*, 188 F. Supp. 3d 927, 937–39 (D. Ariz. 2016) (dismissing ACFA theories based on representations that the complaint did not plausibly allege were inaccurate or otherwise materially false or misleading); *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781–82 (4th Cir. 2013) (affirming dismissal of MCPA claim because the challenged statements were not false and the remaining generalized allegation failed to identify any particular false statement).

The Complaint at best alleges insufficient substantiation. Plaintiffs assert that research concerning NAD+ is "limited or inconclusive" (CCAC ¶ 35), and identify no study, testing, or other factual basis to support any allegation that any of the challenged advertising is in fact false. For example, the Complaint does not allege that any study has found the Products do *not* increase NAD+ levels, that there is

scientific evidence or published scientific literature that demonstrates NAD+ does *not* support any advertised health benefits, or that studies or published scientific literature demonstrate that the Products do *not* confer any advertised benefits. Instead, the Complaint relies exclusively on the NAD and NARB's conclusions that the studies submitted by Defendants in those voluntary proceedings "did not *support*" certain challenged messages, rather than any conclusion of falsity. CCAC ¶¶ 67-78 (emphasis added).[3]

NAD and NARB examined whether Defendants' studies constituted sufficiently "competent and reliable scientific evidence" to support the messages at issue. NAD Report at 15; NARB Report at 16. That analysis included, among other things, a review of the reliability of the study methodologies, including study duration, sample size, and study population. NAD Report at 6-7. To the extent NAD and NARB recommended that certain advertising be modified or discontinued, this was based on their view that the proffered evidence did not reliably support the challenged messages under this analysis. *See generally* NAD & NARB Reports. And of course, NAD and NARB did not opine on the broader universe of scientific evidence concerning NAD+. They considered only the studies before them.

For example, with respect to the claims that the Products increase NAD+ levels, Niagen submitted ten clinical studies that found NR—the key ingredient in the

---

[3] To the extent Plaintiffs contend their allegations that they "felt none of the promoted health benefits" and that the Product "did not provide the benefits claimed by Defendants" (CCAC ¶¶ 89, 98, 105, 112) constitute a factual basis for their allegations of falsity, that is wrong. These allegations are, at best, anecdotal, and are wholly conclusory and implausible—a consumer taking a dietary supplement would not "feel" whether the Product increased their NAD+ levels or was supporting their heart and brain health, for example. *See Obillo*, 2025 WL 844389, at *6–8 (rejecting anecdotal allegation that plaintiff "did not experience any of the relief the Product claimed it would provide" to demonstrate falsity); *Tubbs v. AdvoCare Int'l, LP*, 2017 WL 4022397, at *6 (C.D. Cal. Sept. 12, 2017) (rejecting as conclusory and insufficient allegations that plaintiffs "realized none of the alleged benefits" of defendant's products), *aff'd*, 785 Fed. App'x 396, 396 (9th Cir. 2019) (holding that plaintiffs' "anecdotal evidence, standing alone," was insufficient to create an inference of falsity).

Products—increases NAD+ levels at the supplementation levels found in the Products. NAD Report at 8-11. NAD found based on these studies that "[t]he record demonstrates that NR supplementation can increase NAD+ levels under certain tested conditions," "a single dose of NR can acutely raise NAD+ levels," and that the claim that "Clinical studies show that Tru Niagen begins elevating NAD+ levels within hours of taking your first dose" was supported. *Id.* at 11-12. Nevertheless, NAD determined that "[b]ecause the studies vary substantially in population, design, duration, dosing, and results," they did not adequately substantiate to NAD's standard claims that the Product significantly increases and maintains elevated NAD+ levels. *Id.* at 11. Similarly, NAD recognized that "the science supports the plausibility of NR's involvement in cellular aging pathways," but stated that "mechanistic explanations alone are not sufficient to substantiate" certain challenged messages about functional health outcomes. *Id.* at 26. NARB agreed with NAD's concerns about the stated "shortcomings and/or limitations" in the clinical evidence submitted by Niagen to support those messages. *See* NARB Report at 17.

Importantly, however, neither NAD nor NARB identified any facts or studies that affirmatively demonstrate that the Product *does not* significantly increase or maintain NAD+ levels or provide any other advertised benefit. *See generally* NAD & NARB Reports. Rather, their conclusions and recommendations that Plaintiffs rely on were based exclusively on a *lack* of substantiation—a different standard that courts have repeatedly rejected in putative class actions like this one.

The same is true for all the challenged advertising. *Id.* The NAD decision overflows with conclusions about lack of substantiation. The word "substantiate" (or its derivatives) appears dozens of times in the decision to explain NAD's conclusions, and equivalent formulations (such as lacking in "support" or "evidence") even more frequently. *See, e.g.*, NAD Report at 8, 14, 15, 17, 20, 22, 24, 26, 28, 30-32. In fact, NAD *could not* have made a finding of falsity based on the evidence before it. Tellingly, the challenger in the NAD proceeding presented no scientific evidence that

purported to demonstrate that any of Defendants' advertising is false and that the Products do not perform as advertised, so NAD did not consider any such evidence. Nor have Plaintiffs in this case presented any such purported evidence. If Plaintiffs had a viable claim, one would expect them to plead the existence of a clinical study or other peer-reviewed literature that purports to demonstrate that the Products do not confer the advertised benefits. The Complaint is devoid of any such allegations.

This was precisely the basis on which the court in *Obillo* dismissed a similar attempt to bring a putative class action based on an NAD recommendation that the defendant discontinue advertising that its product was "clinically shown" to improve IBS symptoms. 2025 WL 844389. In particular, NAD found that the clinical study offered by defendant to support this advertising was methodologically unreliable. *Id.* at *1. Piggy-backing off that NAD report, the plaintiff alleged the defendant's advertising was false and misleading "because the Product has 'not been 'clinically proven' to be effective' in treating IBS symptoms, and because she herself 'did not experience any of the relief' the label claimed the Product would provide." *Id.* The *Obillo* court noted that "[t]he law recognizes the conceptual dividing line between a claim that an advertisement is false versus a claim that an advertisement lacks substantiation," and that the NAD report "concluded only that the underlying study was unreliable" and "did not conclude, nor does Plaintiff otherwise allege, that the underlying study's findings regarding the Product's intended benefits were wrong." *Id.* at *6, *8. The court therefore dismissed the plaintiff's consumer-protection claims as impermissible lack-of-substantiation claims.

This case is no different, and all of Plaintiffs' claims should be dismissed on this basis alone. *See also Carrillo v. Wm. Wrigley Jr. Co.*, 2010 WL 11596523 (C.D. Cal. Apr. 15, 2010) (dismissing claims premised on an NAD decision because NAD's finding that methodological flaws rendered studies insufficient to substantiate the advertising—despite "promising results"—did not plead how the advertising was false); *Gaul v. Bayer Healthcare LLC*, 2013 WL 12181778, at *1 (D.N.J. Feb. 11,

2013) (granting motion to dismiss false advertising claims based on NAD report, noting "the Complaint alleges merely that the NAD Report criticized Bayer's study as unreliable . . . . That a research study may be unreliable does not mean that its conclusions are necessarily incorrect."); *Brown v. SharkNinja Operating LLC*, 2024 WL 4563387, at *4–5 (D.N.J. Oct. 23, 2024) (dismissing complaint that attempted "to convert the National Advertising Division ruling into a cause of action").

### C. Plaintiffs' Allegations Based on the Structure/Function Claims Are Preempted.

All of Plaintiffs' allegations and causes of action related to the Structure/Function Claims are not only improper lack-of-substantiation claims, but must also be dismissed for the further independent reason that they are preempted by federal law. The Dietary Supplement Health and Education Act of 1994 ("DSHEA") expressly permits a dietary supplement manufacturer to make structure/function claims—that is, claims that describe the role of a nutrient or dietary ingredient in affecting the structure or function of the body—provided the statement (1) is truthful and not misleading; (2) is accompanied by a disclaimer that the statement has not been evaluated by the FDA; and (3) does not purport to diagnose, treat, cure, or prevent any disease. 21 U.S.C. § 343(r)(6)(A)–(C); 21 C.F.R. § 101.93; *Greenberg v. Target Corp.*, 985 F.3d 650, 654–55 (9th Cir. 2021) (describing DSHEA's three-part framework for structure/function claims). The FDCA, in turn, prohibits states from establishing—"directly or indirectly"—any requirement with respect to such claims that is "not identical to" the federal requirements governing structure/function claims. 21 U.S.C. § 343-1(a)(5).

The Structure/Function Claims at issue—including claims that NAD+ "promote[s] healthy cell activity" and "supports brain health, muscle health and recovery, heart health, cellular energy and repair"—are unquestionably permitted under the DSHEA framework. These statements are accompanied by the required disclaimer: "These statements have not been evaluated by the Food and Drug

Administration. This product is not intended to diagnose, treat, cure, or prevent any disease." *See* Exs. 3 at 2; 4.[4] They do not purport to diagnose, treat, cure, or prevent any disease, and the Complaint does not allege otherwise.

Plaintiffs themselves undercut their own claims. The Complaint not only fails to plead facts tending to show the Structure/Function claims are false, but also recognizes that NAD+ promotes and supports these structures and functions of the body. In fact, the Complaint expressly acknowledges that "[l]ower NAD+ levels have been linked to various age-related changes, such as muscle loss and fatigue, metabolic issues and cognitive decline, among others." CCAC ¶ 31. The NAD Report on which Plaintiffs rely similarly recognized that NAD+ "is an essential coenzyme found in all living cells and is involved in a number of fundamental biological processes." NAD Report at 5. All of Plaintiffs' claims based on these Structure/Function Claims are therefore preempted. *See, e.g.*, *Dachauer*, 913 F.3d at 846–48 (finding FDCA preempts plaintiffs' claims based on statements that defendants' supplements "promote and support cardiovascular, circulatory, and heart health"); *Bowler v. Nestlé Health Sci. U.S., LLC*, 763 F. Supp. 3d 996, 1001–02 (C.D. Cal. 2025) (same as to statements that supplement "Supports Heart & Immune Health").

Plaintiffs attempt to circumvent this well-established legal bar on their claims by relying on the NAD Report's determination that "claims framed in cellular or mechanistic language may nevertheless convey broader consumer-perceptible health benefits." CCAC ¶ 68. For example, NAD stated that the claim "supports heart health" "inherently communicates a functional cardiovascular health benefit" and "not merely intracellular biochemical activity," and that "supports brain health" communicates "a functional cognitive-health benefit . . . describing effects on mental

[4] The CCAC incorporates these advertising materials by reference, and they form the basis of Plaintiffs' claims. *See* CCAC ¶¶ 55, 59, 78, 85–87, 92-96, 108–10. The Court therefore may consider the complete advertising and labeling—including the surrounding language and disclaimers—rather than only the selected portions quoted or reproduced in the CCAC. *See Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005) (considering the complete webpages and surrounding context where the complaint relied on selected portions of the website).

functioning, cognitive performance, or neurological well-being, rather than intracellular biochemical activity." NAD Report at 16, 19. From this, Plaintiffs argue the Structure/Function Claims promise "meaningful real-world anti-aging and health benefits, rather than merely affecting laboratory biomarkers or cellular mechanisms." CCAC ¶ 63; *see also id.* ¶¶ 56, 68, 69.

This argument fails. NAD does not apply the FDA's structure/function framework. As NAD expressly stated, it does not consider "how an advertiser classifies its claims under FDA's structure/function framework." NAD Report at 14; *see also* NARB Report at 16 (noting NAD applied FTC advertising standards, not the DSHEA structure/function framework). NAD's analysis therefore has no bearing on the preemption question before this Court.

Courts have repeatedly rejected the argument that permissible structure/function claims can be recharacterized as broader health promises to escape preemption. *See, e.g.*, *Greenberg*, 985 F.3d at 655–57 (dismissing allegations that "helps support healthy hair and skin" claim was misleading because the product provides no real world health benefit to most consumers, noting plaintiff "cannot implicitly import a disease claim requirement—evidence showing the product's impact on the consumer's health or disease—into the structure/function claim"); *Dachauer*, 913 F.3d at 848–49 (finding preempted allegations that "promote and support cardiovascular, circulatory, and heart health" communicates that supplement prevents cardiovascular disease); *Bowler*, 763 F. Supp. 3d at 1001–02 (C.D. Cal. 2025) (dismissing allegations that "HEART HEALTH" and "Supports Heart & Immune Health" claims were deceptive based on studies purporting to show nutrients did not prevent cardiovascular disease and increased risk of atrial fibrillation in certain populations).

Plaintiffs' causes of action challenging the Structure/Function Claims, and alleging that these claims communicate broader "real-world" anti-aging and health

benefits should therefore also be dismissed on the independent grounds that they are preempted.

**D. The Unjust Enrichment Claim Independently Fails.**

The Complaint's unjust enrichment claim (Count VII) independently fails because California does not recognize unjust enrichment as a standalone cause of action. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Even if construed as quasi-contract or restitution, the claim is derivative of Plaintiffs' failed substantive claims and fails with them.[5]

**E. The Breach of Express Warranty Claim Independently Fails.**

To state a breach-of-express-warranty claim, Plaintiffs must allege a specific "affirmation of fact or promise" that became "part of the basis of the bargain" and that the Product did not conform. Cal. Com. Code § 2313(1)(a); *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013).

Plaintiffs premise Count VIII on the allegation that Defendants warranted the Products were clinically proven and scientifically demonstrated to provide meaningful anti-aging and health benefits. CCAC ¶ 207. But Plaintiffs identify no advertisement containing that statement, and their inferred takeaway from multiple ads is not an express warranty. *Id.* ¶ 208. Count VIII therefore fails.

**F. Plaintiffs Fail to State a Claim for Equitable Monetary Relief.**

Plaintiffs' claims for equitable monetary relief fail because they do not allege that damages are inadequate to redress the same economic loss for which they seek restitution—paying for Products they allegedly would not have purchased or would

[5] To the extent Plaintiffs purport to assert Count VII under Arizona or Maryland law, the claim fails for the same reason. *See e.g., State Farm Mut. Auto. Ins. Co. v. Carefree Land Chiropractic, LLC*, 2018 WL 6514797, at *3–4 (D. Md. Dec. 11, 2018), *recons. denied*, 2019 WL 4722675 (D. Md. Sept. 25, 2019) (dismissing plaintiff's unjust enrichment claim after concluding plaintiff's fraud claim was not viable); *In re Ariz. Theranos, Inc. Litig.*, 256 F. Supp. 3d 1009, 1034–35 (D. Ariz. 2017) (dismissing unjust enrichment claim premised on affirmative misrepresentations because those misrepresentations were inadequately pleaded), *recons. granted in part on other grounds*, 2017 WL 4337340 (D. Ariz. Sept. 29, 2017).

have purchased for less. CCAC, Prayer for Relief; *id.* ¶¶ 90, 99, 106, 113; *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *Obillo*, 2025 WL 844389, at *3–4; *Rodriguez v. FCA US LLC*, 2023 WL 3150075, at *3–5 (C.D. Cal. Mar. 21, 2023) (Slaughter, J.). The claims for equitable monetary relief, including the exclusively equitable UCL, FAL and unjust enrichment claims, should be dismissed on this basis also.

### G. Plaintiffs' Claims Based on Unidentified Advertising Independently Fail Under Rule 9(b).

Because Plaintiffs' claims sound in fraud, Plaintiffs must plead the "who, what, when, where, and how" of the alleged misconduct. *Kearns*, 567 F.3d at 1125–27.

Plaintiff Hart alleges that she viewed unspecified social media influencer videos, without identifying any particular video, influencer, platform, date, or statement. CCAC ¶¶ 94–96. The Complaint also vaguely alleges that Defendants made representations concerning "vitality", "longevity," and "immune health." *See, e.g.*, CCAC ¶¶ 2, 56, 62. But those representations do not appear in any advertising identified in the Complaint, and Plaintiffs do not allege where the representations were made or that any named Plaintiff encountered them before purchasing Tru Niagen. Claims premised on these unidentified advertisements and representations should be dismissed under Rule 9(b) also. *See e.g.*, *Kearns*, 567 F.3d at 1126 (affirming dismissal where plaintiff failed to identify what advertisements he encountered, when he encountered them, or which representations he relied on in purchasing the product); *Briseno v. ConAgra Foods, Inc.*, 2011 WL 13128869, at *9–10 (C.D. Cal. Nov. 23, 2011) (dismissing claims where plaintiff failed to allege where he encountered representations and failed to identify which label, advertisement, or statement he relied upon).

## II. PLAINTIFFS LACK STANDING TO BRING CERTAIN CLAIMS UNDER RULE 12(B)(1)

### A. Rule 12(b)(1) Legal Standard

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction. If a plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction, and the case must be dismissed. *See Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007). To establish Article III standing, a plaintiff must show that she: (1) has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC)*, 528 U.S. 167, 180–81 (2000). Standing is a threshold question, and plaintiff bears the burden of establishing it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Article III "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996); *see also Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."). Standing must therefore exist for each claim and each form of relief sought. *Bates*, 511 F.3d at 985 (en banc) (holding that a plaintiff must establish standing separately for each form of relief requested). In a false-advertising action, that means each named Plaintiff must allege an injury traceable to the particular product and representation she challenges. A representation that a plaintiff never saw, read, or heard could not have caused her purchase. *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1014 (N.D. Cal. 2013) (explaining that causation based on a misrepresentation requires actual reliance on that representation).

**B. Plaintiffs Lack Standing to Assert Claims Related to Products They Did Not Purchase.**

Courts in the Central District of California have rejected the proposition that purchasing one product confers standing to challenge other products, including supposedly "substantially similar" products. In *Lorentzen v. Kroger Co.*, the Court explained that the substantial-similarity approach "appears to be inconsistent with the basic concept of standing" because "[t]he standing requirement extends to each claim and each remedy sought." 532 F. Supp. 3d 901, 908 (C.D. Cal. 2021) (Blumenfeld, J.). *Ringler* subsequently applied *Lorentzen* and held that a plaintiff who "bought only one of the Products named in the Complaint" suffered no injury "related to the other Products." *Ringler v. J.M. Smucker Co.*, 783 F. Supp. 3d 1229, 1245–46 (C.D. Cal. 2025) (Hwang, J.) (following *Lorentzen* and declining to extend standing to unpurchased products).

Each of the four named Plaintiffs purchased the same product—Tru Niagen 300 mg capsules. CCAC ¶¶ 16–19. Yet the Complaint defines "Products" to include an unidentified universe of "substantially similar Tru Niagen Products marketed using the same or substantially similar claims." *Id.* ¶ 55. It neither identifies those additional products nor alleges facts showing that any one of them shares the same or "substantially similar" dosage, formulation, configuration, or challenged representations as the purchased product. Under *Lorentzen* and *Ringler*, Plaintiffs' claims must be limited to the specific Tru Niagen 300 mg products they purchased, and all claims as to products other than Tru Niagen 300 mg capsules should be dismissed for lack of standing.[6]

[6] Plaintiffs' failure to plausibly plead that any other Tru Niagen products are "substantially similar" to the Product they purchased would also require dismissal even under a "substantial similarity" framework. *See, e.g.*, *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1141–42 (N.D. Cal. 2013) (dismissing claims for unpurchased snack products with different labeling where plaintiff failed to plead substantial similarity).

**C. Plaintiffs Lack Standing to Assert Claims Related to Advertising They Did Not See and Rely On.**

Plaintiffs Jacobs and Ivey allege that before purchasing the Product they reviewed the Tru Niagen Amazon storefront and product listing; Erslev alleges she reviewed the Tru Niagen website; and Hart alleges she reviewed the product label and unspecified social media influencer videos. CCAC ¶¶ 85–87, 94–96, 102–103, 109–110. Yet the Complaint seeks to challenge advertising disseminated through numerous channels that no named Plaintiff alleges they reviewed or relied on in making their purchase decision, including podcasts, subscription programs, all testimonials, social media and influencer campaigns, all websites, and unspecified digital advertising. *Id.* ¶¶ 55–62.[7] Notably, while the Complaint purports to challenge representations concerning "vitality," "longevity," and "immune health" (*id.* ¶¶ 56, 62), such representations do not appear in the advertising identified in the CCAC that Plaintiffs allege they reviewed and relied on. *See id.* ¶¶ 55-60, 85–87, 94–96, 102–103, 109–110.

Plaintiffs were not injured by and do not have standing to bring claims based on advertisements and advertising statements that they did not see and rely on in making their purchasing decisions. *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011) (limiting claims to representations on which the named plaintiffs alleged reliance). Plaintiffs' claims based on advertising materials and representations other than those they allege they reviewed and relied on should therefore be dismissed.

**D. Plaintiffs Lack Standing to Seek Injunctive Relief.**

To have standing to seek injunctive relief, a plaintiff must show "a sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v.*

[7] While Plaintiff Hart alleges she saw influencer videos on social media, she does not allege that the influencer video identified in the Complaint is the one she reviewed. *See id.* ¶¶ 61, 94.

*Lyons*, 461 U.S. 95, 111 (1983). A named plaintiff that is now aware of the alleged falsity and is thus unlikely to be deceived again in future cannot show the requisite likelihood of future injury. *Rahman v. Mott's LLP*, 2018 WL 4585024, at *3 (N.D. Cal. Sept. 25, 2018) ("[Plaintiff] is able to rely on the packaging now that he understands the 'No Sugar Added' label").

Plaintiffs here cannot allege a real and immediate threat that they will again be injured by the challenged advertising in future. Plaintiffs themselves allege that they now believe the Product does not work as advertised or provide them with the advertised benefits. CCAC ¶¶ 89–91, 98–100, 105–107, 112–114. Therefore, by their own account, they are no longer likely to be deceived by the challenged advertising. *See Rahman*, 2018 WL 4585024, at *3. And while Plaintiffs allege they "would consider purchasing the Products again if Plaintiff could trust that Defendants' representations concerning the Products were truthful, accurate, and non-misleading" (CCAC ¶¶ 91, 100, 107, 114), those conclusory allegations are wholly implausible given their assertions that the products do not provide the advertised benefits and that "after using the Product consistently and as directed," Plaintiffs themselves "felt none of the promoted health benefits." CCAC ¶¶ 89, 98, 105, 112.

Separately, Plaintiffs cannot plausibly plead that they are likely to be deceived by the challenged advertising again in future because, as the Complaint recognizes, Defendants have already agreed to modify this advertising in accordance with NAD and NARB's recommendations. CCAC ¶ 77; *see also Bruton v. Gerber Prods. Co.*, 2018 WL 1009257, at *6–7 (N.D. Cal. Feb. 13, 2018) (plaintiff lacked standing because the challenged labeling had ceased, leaving "nothing left to enjoin"); *Lanovaz v. Twinings N. Am., Inc.*, 2016 WL 4423846, at *3–4 (N.D. Cal. Sept. 2, 2016) (finding no threat of future injury where the defendant had discontinued the challenged labels), *aff'd*, 726 F. App'x 590, 591 (9th Cir. 2018).

Plaintiffs' request for injunctive relief should therefore be dismissed.

**E. Plaintiffs Lack Standing to Assert Claims Under Laws of Other States.**

The named Plaintiffs allege they reside in California, Arizona, and Maryland, respectively, and that they purchased the Product in these three States. CCAC ¶¶ 16-19. Nonetheless, Counts VI and VII of the Complaint purport to bring claims for fraud and unjust enrichment under the laws of California and unspecified "states with materially similar laws." CCAC ¶¶ 193, 201.

No named Plaintiff alleges that he or she purchased a Product or was injured in any State other than California, Arizona, and Maryland. Plaintiffs therefore lack standing to bring claims under the laws of other States, and such claims should be dismissed. *See In re Glumetza Antitrust Litig.*, 611 F.Supp.3d 848, 866 (N.D. Cal. Mar. 5, 2020) (dismissing claims under the laws of states where no named plaintiff purchased the product or suffered injury); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009) ("Where, as here, a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal.").

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety.

Certificate of Compliance Per Civil L.R. 11-6.2: The undersigned, counsel of record for Defendants, certifies that this brief contains 6,763 words, which complies with the word limit of L.R. 11.6-1.

Certificate of Compliance Per Civil L.R. 7-3: This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on September 9, 2026.

Dated: September 15, 2026

By: /s/ *Chelsea V. Samuels*
Chelsea V. Samuels

**PROSKAUER ROSE LLP**
CHELSEA V. SAMUELS (SBN 315257)
csamuels@proskauer.com
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 557-2900
Facsimile: (310) 557-2193

BALDASSARE VINTI (*pro hac vice* pending)
bvinti@proskauer.com

JEFFREY H. WARSHAFSKY (*pro hac vice* pending)
jwarshafsky@proskauer.com
Q. JENNIFER YANG (*pro hac vice* pending)
jyang@proskauer.com
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

*Attorneys for Defendants NIAGEN BIOSCIENCE, INC. and CHROMADEX, INC.*