**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
Luke Sironski-White (SBN 348441)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: *ltfisher@bursor.com*
*lsironski@bursor.com*

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (SBN. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: *greg@sinderbrandlaw.com*

**KAPLAN FOX & KILSHEIMER LLP**
Justin B. Farar (SBN 211556)
12400 Wilshire Boulevard, Suite 910
Los Angeles, CA 90025
Telephone: (310) 614-7260
Email: *jfarar@kaplanfox.com*

Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
Walter B. Howe (SBN 244680)
Sophia V. Pintar (SBN 367193)
1999 Harrison Street, Suite 1501
Oakland, CA 94612
Telephone: (415) 772-4700
Facsimile: (415) 772-4707
Email: *lking@kaplanfox.com*
*mgeorge@kaplanfox.com*
*whowe@kaplanfox.com*
*spintar@kaplanfox.com*

*Co-Lead Interim Class Counsel and Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

MELISSA JACOBS, CARYN HART, CLARE ERSLEV, and ANISE IVEY, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

NIAGEN BIOSCIENCE, INC., and CHROMADEX, INC.,

Defendants.

Case No. 8:26-cv-01365-FWS-KES

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Date: December 3, 2026
Time: 10:00 AM
Judge: Hon. Fred W. Slaughter
Courtroom: 10D

## TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ..... 1

THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS..... 2

I. TESTING SHOWS DEFENDANTS' CLAIMS ARE AFFIRMATIVELY FALSE..... 2

II. FALSE "CLINICALLY PROVEN" REPRESENTATIONS ARE ACTIONABLE UNDER CALIFORNIA LAW ..... 6

III. PLAINTIFFS' STRUCTURE/FUNCTION CLAIMS ARE NOT PREEMPTED..... 9

IV. PLAINTIFFS' ALLEGATIONS SATISFY RULE 9(B) ..... 11

V. PLAINTIFFS CAN BRING CLAIMS FOR SUBSTANTIALLY SIMILAR PRODUCTS..... 14

VI. PLAINTIFFS SUFFICIENTLY IDENTIFY ADVERTISEMENTS THEY RELIED ON AND OTHER ADVERTISING IS SUBSTANTIALLY SIMILAR..... 16

VII. PLAINTIFFS CAN SEEK INJUNCTIVE RELIEF ..... 18

VIII. DISMISSAL OF CLAIMS UNDER OTHER STATES' LAWS IS PREMATURE..... 19

CONCLUSION..... 21

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Aloudi v. Intramedic Rsch. Grp., LLC*, 729 F. App'x 514 (9th Cir. 2017) ........ 8

*Battle v. Taylor James, LLC*, 607 F. Supp. 3d 1025 (C.D. Cal. 2022) ........ 14, 15, 16

*Bitton v. Gencor Nutrientes, Inc.*, 654 F. App'x 358 (9th Cir. 2016) ........ 2, 4, 7

*Bowler v. Nestlé Health Sci. U.S., LLC*, 763 F. Supp. 3d 996 (C.D. Cal. 2025) ........ 11

*Bruno v. Quten Rsch. Inst., LLC*, 280 F.R.D. 524 (C.D. Cal. 2011) ........ 17

*Bruton v. Gerber Prods. Co.*, 2018 WL 1009257 (N.D. Cal. Feb. 13, 2018) ........ 19

*Bush v. Rust-Oleum Corp.*, 2021 WL 24842 (N.D. Cal. Jan. 4, 2021) ........ 18

*Carrillo v. Wm. Wrigley Jr. Co.*, 2010 WL 11596523 (C.D. Cal. Apr. 15, 2010) ........ 5

*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) ........ 20

*Collazo v. Wen by Chaz Dean, Inc.*, 2015 WL 4398559 (C.D. Cal. July 17, 2015) ........ 20

*Collyer v. Catalina Snacks Inc.*, 712 F. Supp. 3d 1276 (N.D. Cal. 2024) ........ 15

*Dachauer v. NBTY, Inc.*, 913 F.3d 844 (9th Cir. 2019) ........ 11

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) ........ 18

*Durnford v. MusclePharm Corp.*,
907 F.3d 595 (9th Cir. 2018)....................9

*Ebeid ex rel. United States v. Lungwitz*,
616 F.3d 993 (9th Cir. 2010)....................12

*Forcellati v. Hyland's, Inc.*,
876 F. Supp. 2d 1155 (C.D. Cal. 2012)....................16, 20, 21

*Forcellati v. Hyland's, Inc.*,
2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)....................20

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)....................19

*Gonzales v. Nat. Factors Nutritional Prods. Inc.*,
2024 WL 4609853 (C.D. Cal. June 28, 2024)....................15

*Greenberg v. Target Corp.*,
985 F.3d 650 (9th Cir. 2021)....................9, 10

*Greenwood v. CompuCredit Corp.*,
2010 WL 4807095 (N.D. Cal. Nov. 19, 2010)....................17

*Grimbaldeston v. Saraya USA, Inc.*,
2025 WL 3677857 (N.D. Cal. Dec. 17, 2025)....................7

*Gunaratna v. Dennis Gross Cosmetology LLC*,
2020 WL 8509681 (C.D. Cal. Nov. 13, 2020)....................14

*In re Ferrero Litig.*,
794 F. Supp. 2d 1107 (S.D. Cal. 2011)....................17

*In re NJOY, Inc. Consumer Class Action Litig.*,
2015 WL 12732461 (C.D. Cal. May 27, 2015)....................17

*In re Tesla Advanced Driver Assistance Sys. Litig.*,
350 F.R.D. 119 (N.D. Cal. 2025)....................18

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009)....................17

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)....................3

*Kroessler v. CVS Health Corp.*,
977 F.3d 803 (9th Cir. 2020)....................10, 11

*Kurin, Inc. v. ICU Medical, Inc.*,
2024 WL 5416672 (C.D. Cal. Nov. 8, 2024)....................14

*Kwan v. SanMedica International*,
854 F.3d 1088 (9th Cir. 2017)....................2, 4, 7, 8

*Lanovaz v. Twinings N. Am., Inc*,
2016 WL 4585819 (N.D. Cal. Sept. 2, 2016)....................19

*Lorentzen v. Kroger Co.*,
532 F. Supp. 3d 901 (C.D. Cal. 2021)....................14

*Lusnak v. Bank of Am., N.A.*,
883 F.3d 1185 (9th Cir. 2018)....................9

*Lytle v. Nutramax Labs., Inc.*,
2019 WL 8060077 (C.D. Cal. Dec. 6, 2019)....................4

*Mack v. LLR, Inc.*,
2018 WL 6927860 (C.D. Cal. Aug. 15, 2018)....................19

*McCracken v. KSF Acquisition Corp.*,
2023 WL 5667869 (C.D. Cal. Apr. 4, 2023)....................6, 7

*McCrary v. Elations Co., LLC*,
2013 WL 6403073 (C.D. Cal. July 12, 2013)....................7

*McLellan v. Fitbit, Inc.*,
2018 WL 2688781 (N.D. Cal. June 5, 2018)....................12

*Mendoza v. Procter & Gamble Co.*,
707 F. Supp. 3d 932 (C.D. Cal. 2023)....................18

*Moore v. EO Prods., LLC*,
2023 WL 6391480 (N.D. Cal. Sept. 29, 2023)....................16

*Morey v. NextFoods, Inc.*,
2010 WL 2473314 (S.D. Cal. June 7, 2010)....................17

*National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.*,
107 Cal. App. 4th 1336 (2003)....................4

*Obillo v. i-Health Inc.*,
2025 WL 844389 (N.D. Cal. Mar. 18, 2025) .......... 2, 5

*Orlick v. Rawlings Sporting Goods Co.*,
2013 WL 12139142 (C.D. Cal. Feb. 20, 2013) .......... 17, 18

*Orozco v. Target Corp.*,
2026 WL 410502 (C.D. Cal. Feb. 10, 2026) .......... 14

*Ringler v. J.M. Smucker Co.*,
783 F. Supp. 3d 1229 (C.D. Cal. 2025) .......... 14

*Rivera v. Peri & Sons Farms, Inc.*,
735 F.3d 892 (9th Cir. 2013) .......... 12

*Roper v. Big Heart Pet Brands, Inc.*,
510 F. Supp. 3d 903 (E.D. Cal. 2020) .......... 18

*Scheibe v. ProSupps USA, LLC*,
141 F.4th 1094 (9th Cir. 2025) .......... 11

*Sonner v. Schwabe N. Am., Inc.*,
911 F.3d 989 (9th Cir. 2018) .......... 6

*Thomas v. Dun & Bradstreet Credibility Corp.*,
100 F. Supp. 3d 937 (C.D. Cal. 2015) .......... 20

*Thorpe v. Abbott Laboratories, Inc.*,
534 F. Supp. 2d 1120 (N.D. Cal. 2008) .......... 19

*Trammel v. KLN Enters., Inc.*,
176 F.4th 629 (9th Cir. 2026) .......... 13

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) .......... 12

*Vasic v. Pat. Health, LLC.*,
2014 WL 940323 (S.D. Cal. Mar. 10, 2014) .......... 16

*Xechem, Inc. v. Bristol-Myers Squibb Co.*,
372 F.3d 899 (7th Cir. 2004) .......... 9

**STATUTES**

21 U.S.C. § 343(r)(6) .......... 10, 11

**RULES**

Fed. R. Civ. P. 9(b) .......... 12

## INTRODUCTION

Defendants marketed Tru Niagen (the "Products") as a "clinically proven" nutritional supplement, promising health benefits for the heart, brain, and immune systems, improved muscle function, and resilient aging, and conveyed that each of those benefits had been clinically demonstrated. That claim of clinical proof was false, and Defendants' own clinical studies show it. In fact, two human trials Defendants submitted to the National Advertising Division ("NAD") that measured cardiovascular outcomes found no statistically significant improvements in blood pressure, arterial stiffness, vascular function, or blood lipids. NAD Report at 18. Two other trials measured NAD+ – which is an essential coenzyme the Product allegedly increases in the human body – in muscle tissue and found no statistically significant increase, even at more than three times the standard 300 mg dose offered by Tru Niagen supplements. *Id.* at 10, 18 n.31, 24. And Defendants' headline claim, that Tru Niagen is clinically proven to increase NAD+ levels by more than 50% in just two weeks, rests on a single study the NAD found was not conducted under ordinary conditions of use.[1] In sum, Defendants' own studies tested for their claimed benefits but did not find them.

The NAD and the National Advertising Review Board ("NARB") reviewed the same evidence and recommended that Defendants discontinue their unqualified "clinically proven" representations and modify or discontinue numerous health-benefit claims. Although these self-regulatory determinations do not themselves establish falsity, they reinforce the plausibility of Plaintiffs' allegations that Defendants' advertising was false and misleading.

---

[1] The NAD found that the only study reporting the advertised percentage was not conducted under ordinary dietary conditions and that its conditions "may have magnified the observed treatment effect." NAD Report at 32. At best, then, Defendants' NAD+ evidence was mixed, and mixed results cannot make a result "clinically proven." *See id.* at 11 (the "clinically proven" standard "requires reliable, consistent evidence"); FTC, *Health Products Compliance Guidance* § III.B.1 (Dec. 2022) (marketers "must have at least the level of support that they claim to have").

Defendants' primary argument is to attempt to recast this case as an impermissible substantiation challenge under *Kwan v. SanMedica International*, 854 F.3d 1088 (9th Cir. 2017). But Plaintiffs challenge affirmative misrepresentations about what clinical testing had established, not merely the absence of supporting research. Such false and misleading representations are actionable under California law. *See Bitton v. Gencor Nutrientes, Inc.*, 654 F. App'x 358, 362 (9th Cir. 2016).

Defendants' remaining arguments fare no better. Federal law does not categorically preempt claims challenging false or misleading advertising; the CCAC satisfies Rule 9(b)'s particularity requirements; and Plaintiffs adequately allege standing concerning substantially similar products and advertising, including a continuing threat of future deception.[2] Defendants' competing interpretations of the advertising and clinical evidence present factual disputes inappropriate for resolution on a motion to dismiss and it should be denied.

## **THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS**

### I. TESTING SHOWS DEFENDANTS' CLAIMS ARE AFFIRMATIVELY FALSE

Defendants argue that Plaintiffs' case is fundamentally flawed because Plaintiffs "identify no study, testing, or other factual basis" showing that "any of the challenged advertising is in fact false." ECF No. 20-1 ("MTD") at 8. Defendants are wrong.

Falsity may be established "by testing, scientific literature, or anecdotal evidence." *Bitton*, 654 F. App'x at 362 (citation omitted). At this stage, falsity is adequately pleaded where a plaintiff alleges that "actual testing or other studies yield[] contrary results" to a defendant's claims. *Obillo v. i-Health Inc.*, 2025 WL 844389, at *6 (N.D. Cal. Mar. 18, 2025). As the NAD Report shows, several of the clinical

[2] Plaintiffs do not oppose dismissal of their unjust enrichment (Count VII) and express warranty (Count VIII) claims, or of their requests for equitable monetary relief under the UCL and FAL, without prejudice. Plaintiffs maintain their claims for injunctive relief. *See infra* § VII.

studies Defendants hold up in "support" of their advertising actually cut against their representations.[3]

*First*, Defendants represented that consumption of Tru Niagen "supports heart health." CCAC ¶¶ 38, 56, 86, 109. Defendants cited multiple studies in support of this claim, but upon review, the NAD found the heart health claim was baseless because there was no "competent and reliable scientific evidence sufficient" to support it. NAD Report at 17. Indeed, two other studies Defendants submitted, the only ones that measured clinical cardiovascular endpoints, cut against the claim. The *Martens* study found that NAD+ supplementation "did not produce statistically significant improvements in systolic or diastolic blood pressure, aortic stiffness, carotid artery compliance, or brachial artery flow-mediated dilation." *Id.* at 18. The *Conze* study likewise "found no statistically significant improvements in blood pressure, blood lipids, or homocysteine levels with NR supplementation up to 1,000 mg per day." *Id.* The NAD also found "no evidence in the record that Tru Niagen increases $NAD^+$ levels in cardiac tissue." *Id.* at 17. These are not critiques of study design; they are controlled human trials of the Products' sole active ingredient that tested for the advertised benefit and did not find it. That Martens reported non-significant "trends" does not help Defendants; a result that is not statistically significant is not a "clinically proven: benefit.

*Second,* Defendants represented that Tru Niagen supports "muscle health and recovery," CCAC ¶¶ 78, 86, 109; Ex. 3 at 2, and that it "Energizes Muscles and Fuels Recovery," Ex. 4 at 2. Those claims depend on the premise that NR raises $NAD^+$ in muscle. But the two studies Defendants offered that looked at muscle tissue, *Elhassan* and *McDermott*, "failed to demonstrate statistically significant increases in

[3] Defendants cannot have it both ways on this record. They ask the Court to consider the full NAD and NARB Reports, MTD at 4 n.2 (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018)), and then argue that those Reports contain no finding of falsity. Plaintiffs rely on the Reports not just for the NAD's conclusions, but for what they record about Defendants' own studies: what each measured and what it found. *See* CCAC ¶¶ 7–10, 65–78.

intramuscular NAD$^+$." NAD Report at 24; *see id.* at 10 (in Elhassan, "muscle NAD$^+$ itself did not significantly increase"); *id.* at 18 n.32 (in *McDermott*, after six months at 1,000 mg daily, "no significant increase in muscle NAD$^+$ content and no meaningful change in fiber type"). If more than three times the standard 300 mg dose, taken daily for six months, does not raise NAD$^+$ in muscle, it is at least plausible that Defendants' 300 mg capsule does not "energize[]" muscles.

This is the evidentiary showing that *Kwan* found missing: facts that the relevant authorities "actually studied or tested the formula" at issue "and found that it does not produce" the advertised result. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1091 (9th Cir. 2017). It is also what sustained the claims in *Bitton*, where the plaintiffs alleged that the defendant's own trial results were not statistically significant. 654 F. App'x at 362; *see also Lytle v. Nutramax Labs., Inc.*, 2019 WL 8060077, at *5 (C.D. Cal. Dec. 6, 2019) (allowing claims that joint-health supplement representations were false where plaintiffs relied on controlled studies finding the ingredients no more effective than placebo). And the clinical record does not stand alone. Each Plaintiff used the Product consistently and as directed and experienced none of the promoted benefits. CCAC ¶¶ 89, 98, 105, 112. That is the anecdotal evidence *King Bio* recognizes, and here it corroborates the clinical findings rather than substituting for them. *See National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.*, 107 Cal. App. 4th 1336, 1348 (2003); *Cf.* MTD at 9 n.3 (citing authority rejecting anecdotal evidence "standing alone").

*Third,* Defendants claim that "Tru Niagen is clinically proven to significantly increase NAD+ levels" at its 300mg dose. NAD Report at 2; CCAC ¶¶ 59, 62, 85, 102, 109. This too is false. Defendants submitted 10 studies in support of this claim to the NAD. And only two of the ten studies (*Trammell* and *Conze*) actually tested a 300 mg dose. NAD Report at 8. The rest used 900 to 2,000 mg. *Id.* at 10–11. Of the two, *Trammell* was a simple single-dose study, *id.* at 9, and "none of the remaining studies measure NAD$^+$ levels at or before two weeks of daily supplementation at the

marketed dose." *Id.* at 12. As for *Conze*, it was flawed because participants were placed on a diet that "curtailed multiple normal dietary sources of $NAD^+$ precursors," which produced a measurable $NAD^+$ decline in the placebo group and a "repletion after depletion" effect that "may overstate the magnitude of benefit consumers would experience under normal dietary patterns." *Id.* at 8–9. Further, the NAD found "no evidence in the record establishing that the *Conze* protocol's restrictive dietary conditions reflect typical consumer nutrition." *Id.* at 9. Read in Plaintiffs' favor, the clinical data does not support the blanket claim that taking the 300mg Tru Niagen product as recommended will raise $NAD^+$ levels "over 50% in just 2 weeks" under ordinary use for all consumers, or that the Product is "clinically proven." That supports a plausible inference that the advertised result is false, not merely unsubstantiated.

The NAD's treatment of Defendants' quantified claim confirms the point. Defendants advertised that Niagen "may boost NAD+ levels by over 50% (300mg) and up to 150% (1,000mg) in most individuals." NAD Report at 3, 32, 37. Of all the studies Defendants submitted, "only the Conze trial reported the particular percentage increases referenced in the advertising," and Conze's placebo group experienced "a measurable $NAD^+$ decline," "indicating that precursor availability during the trial did not reflect normal consumer diets." *Id.* at 32. The NARB agreed. NARB Report at 17. A representation that a specific result has been clinically proven is plausibly false when the only study reporting that result was not conducted under the conditions actual consumers experience.

The *Obillo* and *Carrillo* cases each involved an NAD finding that the advertiser's study was unreliable or even promising, with no allegations that the results showed the products' claims were false . *See Obillo*, 2025 WL 844389, at *8 (NAD "concluded only that the underlying study was unreliable"); *Carrillo v. Wm. Wrigley Jr. Co.*, No. CV09-5341 DMG (RZX), 2010 WL 11596523, at *5 (C.D. Cal. Apr. 15, 2010) (studies showed "promising results" and plaintiff failed to allege falsity). Here, as discussed above, the studies' own findings contradict the advertising, specifically

the "clinically proven" claims. Moreover, NAD and NARB findings can support falsity. *See McCracken v. KSF Acquisition Corp.*, 2023 WL 5667869 (C.D. Cal. Apr. 4, 2023). Defendants point out that some studies show Nicotinamide Riboside ("NR"), the Product's active ingredient, *can* raise $NAD^+$ in blood under certain conditions but that does not help them. MTD at 10. Plaintiffs do not allege that NR never raises blood $NAD^+$. They allege that the advertised magnitude, timing, and downstream health benefits are false. At most, Defendants' reading of the science creates a factual dispute that cannot be resolved on the pleadings. *See Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992–93 (9th Cir. 2018).

Lastly, clinical studies measure efficacy through statistical analysis; they do not—and cannot—guarantee that a product will never produce a particular effect. A controlled clinical study finding no statistically significant benefit is precisely the type of scientific evidence one would expect a plaintiff to produce to challenge an affirmative efficacy claim. What alternative scientific evidence could a plaintiff reasonably be expected to offer? Defendants cannot dismiss such evidence simply because it does not establish ineffectiveness with absolute certainty. To accept that argument would impose a standard of proof that clinical science cannot satisfy and effectively insulate affirmative efficacy claims from challenge, regardless of the contrary clinical evidence.

## II. FALSE "CLINICALLY PROVEN" REPRESENTATIONS ARE ACTIONABLE UNDER CALIFORNIA LAW

Independently, California courts have held that "clinically proven" claims are actionable because they are affirmations to consumers about what the underlying clinical studies purportedly show. Alleging facts that show that the studies do not "clinically prove" what a defendant claims equates to pleading falsity, not lack of substantiation.

The NAD states that a "clinically proven" claim is, "in essence, a promise that there is scientific evidence that proves or establishes the truth of the Advertiser's

claims." NAD Report at 7. Reasonable consumers understand it that way, as a representation that the product's effects have been demonstrated in reliable, controlled studies, and they pay a premium for it. CCAC ¶¶ 39–41, 65, 88, 97, 104, 111. In any event, how a reasonable consumer interprets the meaning of "clinically proven" is an issue of fact not ripe for determination at this time. *Grimbaldeston v. Saraya USA, Inc.*, No. 25-CV-05649-RFL, 2025 WL 3677857, at *2 (N.D. Cal. Dec. 17, 2025) ("Whether a representation is false or misleading to the reasonable consumer is typically a question of fact not suited to a motion to dismiss."). And when the clinical studies do not show the represented result, the promise is false. The Ninth Circuit recognized this distinction in *Bitton v. Gencor Nutrientes, Inc*. There, the defendant argued that the plaintiffs were improperly demanding substantiation, and the court rejected that argument because the plaintiffs did "not here seek substantiation for a claim that Testofen increases free testosterone levels[,]" rather, "they only allege that the assertion that the Gencor trial produced statistically significant results is false." 654 F. App'x 358, 362 (9th Cir. 2016). Those allegations were "sufficient to state a claim." *Id.* Courts in this District have likewise sustained challenges to express claims of clinical proof, including challenges built on NAD and NARB decisions. In *McCracken v. KSF Acquisition Corp.*, No. 5:22-CV-01666-SB-SHK, 2023 WL 5667869, at *1 (C.D. Cal. Apr. 4, 2023), the plaintiff alleged that SlimFast products were falsely labeled "clinically proven" and relied on NAD and NARB decisions finding that the claim conveyed that the products themselves had been clinically tested, when in reality they had not. *Id.* at *5. The court held that the plaintiff had pleaded an affirmative misrepresentation, not lack of substantiation, and denied dismissal of the consumer-protection claims. *Id.; see also McCrary v. Elations Co., LLC*, 2013 WL 6403073, at *10 (C.D. Cal. July 12, 2013) (sustaining challenge to "clinically proven combination" claim where the combination had not actually been tested).

*Kwan v. SanMedica* does not hold otherwise. Rather, there the Ninth Circuit held that a private plaintiff may not shift to the defendant the burden of substantiating

its advertising, and that conclusory allegations of falsity do not suffice. 854 F.3d at 1096–97. The *Kwan* plaintiff alleged only that SanMedica's study was not peer-reviewed and was "not an example of scientific evidence recognized by experts," and she also failed to allege that she actually used the product. *Id.* at 1092.

Finally, in *Aloudi*, the Ninth Circuit assumed that clinical-proof claims are actionable but found the complaint deficient because it did not tie the study at issue to the product, did not show that the study was the sole basis for the claim of clinical proof, and did not allege a comprehensive search of the literature. *Aloudi v. Intramedic Rsch. Grp., LLC*, 729 F. App'x 514, 516 (9th Cir. 2017). None of those gaps exist here. First, the studies are of "Niagen, a form of nicotinamide riboside (NR) and [Defendants'] patented active ingredient," the Products' sole active ingredient, and two of them tested the 300 mg dose the Products contain. NAD Report at 5, 8–11; Ex. 3 at 2. Second, Plaintiffs need not speculate about Defendants' basis for claiming clinical proof. Defendants identified it: the ten clinical studies submitted to NAD for the $NAD^+$ claims, and the additional human studies submitted for the health-benefit claims. NAD Report at 5, 8, 17, 20, 24; NARB Report at 4. Defendants' motion relies on the same studies. MTD at 5, 9–10. Third, the incorporated record shows that this body of evidence does not prove what Defendants represented to be "clinically proven." Of the studies Defendants submitted, only Conze reported the advertised $NAD^+$ increase, and its own placebo data show it was not conducted under ordinary dietary conditions. NAD Report at 9, 32. The same is true of the heart and muscle claims. The NAD found that, as presented, Defendants conveyed that the heart and muscle benefits provided by the Product had been "clinically proven," yet the studies that measured cardiovascular outcomes found no significant effect, and those that measured muscle $NAD^+$ found no significant increase.[4] NAD Report at 17–18, 23–24.

[4] Should the Court find that more detail is required, Plaintiffs request leave to amend to plead these clinical findings expressly and to add allegations based on published

Defendants' advertising also conveyed, by its net impression, that each advertised health benefit had been clinically proven. Defendants placed their "clinically proven" claim directly alongside representations that Tru Niagen is "A COMPLETE ANTI AGING SUPPLEMENT" supporting "brain health, muscle health and recovery, heart health, cellular energy and repair." CCAC ¶¶ 62–64, 78, 86. The NAD reached the same conclusion, finding that the advertising "communicated numerous implied establishment claims." NAD Report at 19 n.32; *see id.* at 17, 19, 23, 26. For several of those benefits, there was no clinical proof at all. Defendants offered no human studies of energy, fatigue, or functional performance, *id.* at 29, and no studies measuring cognitive outcomes in healthy adults, *id.* at 20. A representation that a benefit has been clinically proven, when no clinical study has demonstrated it, is false.

## III. PLAINTIFFS' STRUCTURE/FUNCTION CLAIMS ARE NOT PREEMPTED

Preemption by the Federal Food, Drug, and Cosmetic Act ("FDCA"), "like all federal preemption, is an affirmative defense." *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 n.8 (9th Cir. 2018) (citing *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018)). "'Only when the plaintiff pleads itself out of court — that is, admits all the ingredients of an impenetrable defense — may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6).'" *Id.* (quoting *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004)).

Defendants argue that Plaintiffs' claims are expressly preempted by the FDCA because they are structure/function claims. MTD 12:7-23. "[A] structure/function claim merely describes the function or role of an ingredient or nutrient on the human body." *Greenberg v. Target Corp.*, 985 F.3d 650, 654 (9th Cir. 2021). To make a

---

scientific literature reaching the same conclusions. *See, e.g.*, *Damgaard, et al, "What is really known about the effects of nicotinamide riboside supplementation in humans,"* 2023 Science Advances Review, doi 10.1126/sciadv.adi4862 ("The general finding in human NR trials, especially those concerned with metabolism, is that NR supplementation has very few clinically relevant effects.").

structure/function claim, manufacturers must meet three requirements: (1) The manufacturer must have substantiation that the statement is truthful and not misleading; (2) The statement must contain a prominent disclaimer that the FDA has not evaluated the statement and that the product "is not intended to diagnose, treat, cure, or prevent any disease"; and (3) The statement itself may not "claim to diagnose, mitigate, treat, cure, or prevent" disease. 21 U.S.C. § 343(r)(6)(B)–(C); *Greenberg*, 985 F.3d at 654. Defendants' false advertising statements do not meet this definition.

First, Plaintiffs' claims are not preempted because they allege that Defendants' statements are false, which federal law equally prohibits. 21 U.S.C. § 343(r)(6)(B). "[P]reemption applies only if the plaintiff's legal claims and factual allegations would hold a defendant to a different 'substantiation' standard than the FDCA." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 813 (9th Cir. 2020). Plaintiffs' claims do not. Defendants' own human trials measured cardiovascular endpoints and found no statistically significant improvement, and their muscle trials found no significant increase in muscle $NAD^+$ even at more than three times the 300 mg dose, undermining the premise of the muscle claims. *Supra* § I. Plaintiffs seek to enforce the same prohibition on false and misleading statements that federal law imposes, not a different substantiation standard. *See Kroessler*, 977 F.3d at 812-14. Moreover, Defendants' "clinically proven" representations are not structure/function claims at all; they describe the state of the scientific evidence, not "the role of a nutrient or dietary ingredient" in the body. 21 U.S.C. § 343(r)(6)(A).

Second, the statements do not meet the FDCA's three requirements for structure/function claim preemption as set forth in *Greenberg*: (1) The statements are not "truthful and not misleading" because the very same studies Defendants provided the NAD to justify these claims, in fact, demonstrate the claims are false. *See supra* § I. (2) The statements do not contain "*prominently displayed and in boldface type*," the requisite disclaimer that "This statement has not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any

disease." 21 U.S.C.A. § 343(r)(6)(C) (emphasis added). Defendants' advertising cited to and incorporated in the CCAC does not contain this disclaimer at all. CCAC ¶¶ 2, 55, 56-57, 59-61. Only the single Amazon page and product label attached to Defendants' Motion contain such disclaimers, but these are neither prominently displayed nor in boldface type. *See* NARB Decision at 3, 20-6.[5] But more importantly, Plaintiffs are not challenging the lack of said statement, or asking the Court to impose an additional requirement as it relates to this statement that goes beyond what the FDCA dictates.

Defendants' authorities are also distinguishable. Unlike the plaintiff in *Bowler v. Nestlé Health Sci. U.S., LLC*, Plaintiffs here "raised a plausible inference that the structure/function claims are factually false." 763 F. Supp. 3d 996, 1003 (C.D. Cal. 2025). In *Kroessler*, the 9th Circuit distinguished *Dachauer* on grounds applicable here. *See* MTD 13:13-15 (citing *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 846-48 (9th Cir. 2019)). "[T]his case is distinguished from *Dachauer* by its procedural posture. *Dachauer* was an appeal from a grant of summary judgment, while this case is an appeal from dismissal on the pleadings." *Kroessler*, 977 F.3d at 813.

The Court should thus decline to dismiss Plaintiffs' claims on preemption grounds at the pleading stage. *See Scheibe v. ProSupps USA, LLC*, 141 F.4th 1094, 1100 (9th Cir. 2025) ("FDA preemption is no exception to the rule that 'plaintiffs are generally not expected to provide evidence in support of their claims at the pleading stage.'") .

## IV. PLAINTIFFS' ALLEGATIONS SATISFY RULE 9(B)

Defendants argue that Plaintiffs fail to meet Rule 9(b)'s heightened pleading because their claims are "premised on . . . unidentified advertisements and

---

[5] In fact, many of Defendants' advertisements convey the opposite proposition—that the FDA *has* evaluated the statements. CCAC ¶¶ 2 ("Age better with Tru Niagen . . . The only FDA reviewed and GRAS certified NR in the world."), 57 (same), 59 at 16:17 ("Our patented ingredient Niagen has achieved regulatory acceptance by the US FDA . . . .").

representations." MTD at 16. That is wrong. Plaintiffs have satisfied their burden under Rule 9(b).

First, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This means alleging the "who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotations and citation omitted). The purpose of Rule 9(b)'s heightened standard is for a plaintiff to provide allegations "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge[.]" *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (internal quotations and citation omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 903 (9th Cir. 2013) (quoting Fed. R. Civ. P. 9(b)).

Defendants specifically argue Plaintiff Hart fails to identify any "particular video, influencer, platform, date or statement" she viewed. MTD at 16. But "9(b) 'does not require absolute particularity or a recital of the evidence … [A] complaint need not allege "a precise time frame," "describe in detail a single specific transaction" or identify the "precise method" used to carry out the fraud.'" *McLellan v. Fitbit, Inc.*, 2018 WL 2688781, at *1 (N.D. Cal. June 5, 2018) (quoting *United Healthcare*, 848 F.3d at 1180). While Plaintiff Hart does not state exactly what social media videos from what influencers she saw, she alleges that Defendants' Products' marketing scheme is uniform and pervasive through all of Defendants' marketing channels and that the videos she came across included Defendants' "clinically proven," and health and NAD+ boosting claims. CCAC ¶¶ 56, 61-62, 80, 94. Defendants conveniently ignore that Plaintiff Hart also alleged she "reviewed the language on the labeling, which included Defendants' health claims, such as 'age better'" and relied on these representations as well. CCAC ¶¶ 95-96. The NARB singled out this very claim,

finding that "age better" "conveys health improvement, not just maintenance." NARB Report at 17.

Defendants also take issue with Plaintiffs' supposed "vague" allegations concerning Defendants' "vitality," longevity," and "immune health" claims because "those representations do not appear in the advertising identified in the Complaint." MTD at 16. But the crux of Plaintiffs' allegations is the falsity of Defendants' "clinically proven" claims while the "vitality, longevity and immune health" allegations characterize the messaging Defendants' false claims convey. *See* CCAC ¶¶ 2, 11-12, 38, 47, 49, 54, 56, 62, 77. Even so, Plaintiffs *do* point to specific "clinically proven" NAD+ boosting claims Defendants' make and that Plaintiffs reviewed and relied on in making their purchases. *Id.* § C, ¶¶ 83-114.

Plaintiffs here specify that Defendants "crafted a common advertising campaign across their packaging, websites, Amazon listings, testimonials, influencer campaigns, podcasts, subscription programs, and digital advertising" and provide more than a dozen images that reflect Defendants' uniform marketing scheme and representations. CCAC ¶ 56; *see generally id.* ¶¶ 6, 38, 57-62, 80, 85-86, 95, 102, 109. Moreover, Plaintiffs allege that they reviewed the Product labeling itself, and reviewed Defendants' claims on their Amazon and Tru Niagen websites, including those identified in ¶¶ 38 and 62. *See* CCAC ¶ 5; *see also id.* ¶¶ 38, 57-62, 85, 95, 102, 109. Whereas Plaintiffs here not only plead with particularity what they saw and where, but also what is false about Defendants' representations and why it is false: "Defendants' advertising materially overstated and misrepresented the underlying science concerning the Products and falsely translated biomarker and mechanistic findings into broad consumer-perceptible health and anti-aging claims." CCAC ¶¶ 2, 5, 8; *Trammel v. KLN Enters., Inc.*, 176 F.4th 629, 632-33 (9th Cir. 2026) (finding plaintiff's allegations satisfy 9(b) where they set out the "who," "what," "when," "where," "how," "what is false" and "why it is false"); *see supra* §§ I-II. Accordingly, Plaintiffs' allegations, taken as true, show Defendants' science is unreliable and

support a claim for false advertising. *Kurin, Inc. v. ICU Medical, Inc.*, 2024 WL 5416672, at *11 (C.D. Cal. Nov. 8, 2024) (*Slaughter*, J.).

## V. PLAINTIFFS CAN BRING CLAIMS FOR SUBSTANTIALLY SIMILAR PRODUCTS

Defendants argue that "Plaintiffs' claims must be limited to the specific Tru Niagen 300 mg products they purchased and all claims as to products other than Tru Niagen 300 mg capsules should be dismissed for lack of standing." MTD at 18. Defendants are wrong.

Defendants point to *Lorentzen* and *Ringler* to support their proposition but fail to note that both cases acknowledge a circuit split for whether a plaintiff can assert claims for substantially similar products they did not purchase. *See Lorentzen v. Kroger Co*., 532 F. Supp. 3d 901, 908 (C.D. Cal. 2021) ("Whether Plaintiff can assert claims for substantially similar products she did not purchase is another question, and one on which courts within the Ninth Circuit have split. Some district courts have held that a plaintiff may bring suit for any 'substantially similar' products not actually purchased."); *Ringler v. J.M. Smucker Co.*, 783 F. Supp. 3d 1229, 1245-46 (C.D. Cal. 2025) (same). Their approach for substantially similar products does not control. On the contrary, this Court has followed the "prevailing view in the Ninth Circuit [] that class action plaintiffs can bring claims for products they did not purchase 'as long as the products and alleged misrepresentations are substantially similar.'" *Battle v. Taylor James, LLC*, 607 F. Supp. 3d 1025, 1043 (C.D. Cal. 2022) (Slaughter) (citations omitted). And other courts in this District do so as well. *See Gunaratna v. Dennis Gross Cosmetology LLC*, 2020 WL 8509681, at *4-5 (C.D. Cal. Nov. 13, 2020) ("For reasons of judicial economy, the Court finds persuasive the reasoning of district courts holding that the issue of standing turns on whether the products and the alleged misrepresentations are sufficiently similar.") (citation omitted); *Orozco v. Target Corp.*, 2026 WL 410502, at *6–7 (C.D. Cal. Feb. 10, 2026) ("[W]here Plaintiff pursues a putative class action, the Court finds *Otto* and it[s] progeny persuasive to support

Article III standing for Plaintiff regarding other [products] that Plaintiff did not purchase, but which also bear the same labeling [as the product at issue]."); *Gonzales v. Nat. Factors Nutritional Prods. Inc.*, 2024 WL 4609853, at *5 (C.D. Cal. June 28, 2024) ("[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar") (citations omitted) (collecting cases).

Indeed, under this prevailing view, "[f]actors that other courts have considered include whether the challenged products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Battle*, 607 F. Supp. 3d at 1043 (citation omitted). Here, Plaintiffs allege that the Products include "the Tru Niagen 300mg Product purchased by Plaintiffs and all substantially similar Tru Niagen Products marketed using the same or substantially similar claims across their labeling, packaging, subscription programs, testimonials, social media and influencer campaigns and digital advertising." CCAC ¶ 55. Plaintiffs also provide images of claims for the Products they bought that are identical or substantially similar to Defendants' other products they did not purchase themselves, *e.g.*, Defendants' 1000mg Product. *See generally*, *id* ¶¶ 2, 55-62. Defendants use the same claims, imagery, packaging and labeling for *all* of their Products. *See id.* ¶ 80 ("Defendants' [misrepresentations] … were uniformly presented to consumers at or near the point of purchase."). Critically, all four versions of Tru Niagen are "NAD+ boosting" supplements, all have the same base formulation, *i.e.*, Defendants' patented "NIAGEN" ingredient, which Defendants define as "nicotinamide riboside chloride" and all make the same NAD+ boosting, "healthy aging, cellular health, muscle health, heart health, reproductive health," and "clinically proven" claims. *See Collyer v. Catalina Snacks Inc.*, 712 F. Supp. 3d 1276, 1283 (N.D. Cal. 2024) (finding products substantially similar where packaging was "physically similar … and differentiated

merely by their color … [and] the products are nearly identical in their ingredient lists."). Indeed, the NAD found that the "clinically proven" NAD+ claim appears on the product pages for all four Tru Niagen products and "is directed to the entire Tru Niagen product line." NAD Report at 7; *see also id.* at 4. Further, "although the Products contain other minor ingredients these ingredients are inconsequential. … Any lingering factual disputes regarding the similarities of the Products and Plaintiff[s'] standing to bring claims based on [Products they] did not purchase is better addressed at class certification." *Vasic v. Pat. Health, LLC.*, 2014 WL 940323, at *6 (S.D. Cal. Mar. 10, 2014).

As such, Defendants' arguments are premature because their challenges "would be better addressed at the class certification stage." *Battle*, 607 F. Supp. 3d at 1043 (citing *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012) (agreeing with "decisions that have concluded that Defendants' argument is better taken under the lens of typicality or adequacy of representation, rather than standing")). This is because "analyzing the 'sufficient similarity' of the products is not a standing inquiry, but rather an early analysis of the typicality, adequacy, and commonality requirements of Rule 23." *Moore v. EO Prods., LLC*, 2023 WL 6391480, at *4 (N.D. Cal. Sept. 29, 2023) (internal quotations and citation omitted). Thus, "a representative plaintiff on a motion to dismiss must only demonstrate that the product he purchased is substantially similar to the product(s) he did not purchase." *Vasic*, 2014 WL 940323, at *6. Plaintiffs did just that.

## VI. PLAINTIFFS SUFFICIENTLY IDENTIFY ADVERTISEMENTS THEY RELIED ON AND OTHER ADVERTISING IS SUBSTANTIALLY SIMILAR

Defendants argue Plaintiffs lack standing to assert claims related to "advertising they did not see and rely on," MTD at 19, but Plaintiffs do have standing because they "seek to represent a class of similarly situated individuals, and the other advertisements they plead are *substantially similar* to those on which plaintiffs relied."

*In re NJOY, Inc. Consumer Class Action Litig.*, 2015 WL 12732461, at *20 (C.D. Cal. May 27, 2015). "District courts in California routinely hold that the issue of whether a class representative 'may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.'" *Bruno v. Quten Rsch. Inst., LLC*, 280 F.R.D. 524, 530 (C.D. Cal. 2011) (quoting *Greenwood v. CompuCredit Corp.,* 2010 WL 4807095, at *3 (N.D. Cal. Nov. 19, 2010).

Moreover, "where, as here, a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements." *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009) (At the pleading stage plaintiffs are "not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements."); *see also Morey v. NextFoods, Inc.*, 2010 WL 2473314, at *2 (S.D. Cal. June 7, 2010) (same). The CCAC specifically alleges that "Defendants crafted a common advertising campaign across their packaging, websites, Amazon listings, testimonials, influencer campaigns, podcasts, subscription programs, and digital advertising that paired 'clinically proven' and human-clinical-science messaging with representations concerning anti-aging." CCAC ¶56; *see also id.* ¶¶ 48, 53, 55, 58, 61-62, 64; *supra*, § V.

In any case, the Court at the motion to dismiss stage "need not . . . determine the exact scope of the allegedly misleading statements. Instead, Plaintiff[s] need to allege only that [they] relied on *some* misleading statements made by Defendant in making [their] purchase," which they have done. *Orlick v. Rawlings Sporting Goods Co.*, 2013 WL 12139142, at *4 n.1 (C.D. Cal. Feb. 20, 2013) (emphasis in original) (Declining to extend Defendants' only cited case, *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011) (MTD at 19)); CCAC ¶¶ 85-87, 94-96, 102-03, 109-10. "Defendant's argument that Plaintiff cannot assert claims based on [unseen advertising

statements] is better analyzed under the typicality and adequacy inquiries on a class certification motion." *Orlick*, 2013 WL 12139142, at *4 n.1.

## VII. PLAINTIFFS CAN SEEK INJUNCTIVE RELIEF

Defendants argue Plaintiffs cannot allege a likelihood of future injury because they now know Defendants' advertisements are false, MTD 19-20, but the Ninth Circuit rejected this very argument in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018) (rejecting the argument that "the previously-deceived-but-now-enlightened plaintiff simply does not have standing under Article III to ask a federal court to grant an injunction."), *cert. denied*, 586 U.S. 1051 (2018). Here, there is a likelihood of future injury because each Plaintiff "desires to purchase products like the Products in the future and would consider purchasing the Products again if Plaintiff could trust that Defendants' representations concerning the Products were truthful, accurate, and non-misleading." CCAC ¶¶ 91, 100, 107, 114; *see Mendoza v. Procter & Gamble Co.*, 707 F. Supp. 3d 932, 946 (C.D. Cal. 2023). (allegations plaintiffs "'would like to, and would consider, purchasing the Products again ... [but] will be unable to rely on the Products' advertising or labeling in the future'" are sufficient to establish likelihood of future injury); *Bush v. Rust-Oleum Corp.*, 2021 WL 24842, at *6 (N.D. Cal. Jan. 4, 2021) (Plaintiff "plausibly pleaded future harm by alleging that he will be unable to purchase the products in the future, even though he would like to, based on his inability to rely on the labels' claims.")

Defendants also argue Plaintiffs' request for injunction is mooted because Defendants "have already agreed to modify this advertising." MTD 20:18-27. But courts have found that plaintiffs do not automatically lose standing once defendant removed the offending ads. *See In re Tesla Advanced Driver Assistance Sys. Litig.*, 350 F.R.D. 119, 138 n.5 (N.D. Cal. 2025) (finding plaintiffs had standing to seek injunctive relief when defendant failed to establish that its CEO would not make the challenged statements in the future); *Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 916 (E.D. Cal. 2020) ("Moreover, even if defendant changed its label . . . the

court does not find at the motion to dismiss stage a sufficient basis upon which to conclude that all harmful conduct has ceased."). And Defendants bear the "formidable burden" of showing that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189–90 (2000). They cannot carry it: Niagen announced that it was "deeply disappointed" with the NARB decision, would "nevertheless comply," and still touts "clinically meaningful health benefits." NARB Report at 18.

Defendants' authorities on this issue are also distinguishable. In *Bruton*, the court found the false advertising had *already ceased*. *Bruton v. Gerber Prods. Co.*, 2018 WL 1009257, at *7 (N.D. Cal. Feb. 13, 2018). Here, Defendants have only stated they "will" comply with *some* of the NARB's suggestions. NARB Report at 8;CCAC ¶ 77. Similarly, in *Lanovaz*, the court found that defendant submitted "undisputed" evidence that its "offending labels" were discontinued, which Defendants here have not done. *Lanovaz v. Twinings N. Am., Inc*, 2016 WL 4585819, at *3 (N.D. Cal. Sept. 2, 2016), *aff'd*, 726 F. App'x 590 (9th Cir. 2018).

## VIII. DISMISSAL OF CLAIMS UNDER OTHER STATES' LAWS IS PREMATURE

Defendants contend that "Plaintiffs [] lack standing to bring claims under the laws of other States, and such claims should be dismissed" because no named Plaintiff alleges they purchased a Product or was injured in any state other than California, Arizona, and Maryland. MTD at 21. This is a red herring.

As an initial matter, courts in this District and this Circuit generally hold that it is premature to dismiss class allegations at the motion to dismiss stage. *See Mack v. LLR, Inc.*, 2018 WL 6927860, at *5 (C.D. Cal. Aug. 15, 2018) ("Here, the Court finds significant the procedural posture of *Mazza*. It was decided at the class certification stage, not on a motion to dismiss. Moreover, the Ninth Circuit conducted a detailed choice-of-law analysis . . . .") (internal citations omitted); *Thorpe v. Abbott Laboratories, Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008) ("Motions to strike

class allegations are disfavored because a motion for class certification is a more appropriate vehicle" for Rule 23 arguments.). Because this case is only at the motion to dismiss stage, dismissal of Plaintiffs' nationwide class would be inappropriate and premature.

Even if the Court turned to the issue of whether Plaintiffs can bring claims for class members in other states under California law, Defendants' argument fails. "[N]umerous [] courts have relied on the defendant's principal place of business and headquarters location in determining whether [California's laws] apply [to non-California citizens]." *Collazo v. Wen by Chaz Dean, Inc.*, 2015 WL 4398559, at *4 (C.D. Cal. July 17, 2015).

*Forcellati*, 876 F. Supp. 2d 1155, is instructive. In that case, a New Jersey resident asserted California state law claims against California-based defendants. There the court noted extraterritorial application of California law did not pose an issue because "defendants [were] headquartered in Los Angeles, California [thus]… application of California law pose[d] no constitutional concerns." *Id.* at 1160; *see also Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *4, 13 (C.D. Cal. Apr. 9, 2014) (certifying a nationwide class because "California law applies to Plaintiffs' proposed nationwide class").

Here, Defendants are headquartered in California where the misleading marketing originates. CCAC ¶¶ 20-21. Thus, as California companies, creating misleading representations in California, Defendants can be sued for violations of California laws by non-Californians. *See, e.g.*, *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) ("Defendants are headquartered in California and their misconduct allegedly originated in California. With such significant contacts between California and the claims asserted by the class, application of the California consumer protection laws would not be arbitrary or unfair to defendants."); *Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F. Supp. 3d 937, 946 (C.D. Cal. 2015) ("Plaintiff similarly alleges that Defendant maintains a principal

place of business in California. Thus, Defendant bears the burden to 'defeat the presumption that California law applies and to show a compelling reason justifying displacement of California law.") (cleaned up). "Defendants can only meet this burden by engaging in an analytically rigorous discussion of each prong of California's 'governmental interests' test based on the facts and circumstances of *this* case and *this* Plaintiff's allegations." *Forcellati*, 876 F. Supp. 2d at 1161 (emphasis in original). Thus, striking the nationwide class is premature.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss in its entirety. Should the Court find any aspect of the CCAC insufficiently pleaded, Plaintiffs respectfully request leave to amend, including to plead the clinical findings discussed above.

Dated: October 15, 2026

**BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C.**

By: /s/ *Greg Sinderbrand*
Greg Sinderbrand

Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

**KAPLAN FOX & KILSHEIMER LLP**

By: /s/ *Laurence D. King*
Laurence D. King

Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
Walter B. Howe (SBN 244680)
Sophia V. Pintar (SBN 367193)
1999 Harrison Street, Suite 1501
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
Email: *lking@kaplanfox.com*
*mgeorge@kaplanfox.com*
*whowe@kaplanfox.com*
*spintar@kaplanfox.com*

Justin B. Farar (SBN 211556)
12400 Wilshire Boulevard, Suite 910
Los Angeles, CA 90025
Telephone: 310-614-7260
Email: *jfarar@kaplanfox.com*

*Co-Lead Interim Class Counsel and Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,937 words, which complies with the word limit of L.R. 11-6.1.

By: *<u>/s/ L. Timothy Fisher</u>*
L. Timothy Fisher

## SIGNATURE ATTESTATION

Pursuant to L.R. 5-4.3.4, I certify that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

By: *<u>/s/ L. Timothy Fisher</u>*
L. Timothy Fisher